IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

VLSI TECHNOLOGY LLC,

        Plaintiff,

    v.

INTEL CORPORATION,

        Defendant.

Case No. 6:19-cv-00254-ADA

**DEFENDANT INTEL CORPORATION'S**
**MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ......................................................................................................1

     A.     The Parties ..................................................................................................1

     B.     VLSI's Forum Shopping and Piecemeal Litigation Against Intel ..........2

            1.     First Action Filed:  The California Action...................................2

            2.     Second Action Filed:  The Delaware I Action .............................3

            3.     Third Action Filed:  The Delaware II Action ..............................4

            4.     Fourth, Fifth, and Sixth Actions Filed:  The Texas Actions ......5

III.    THE TEXAS ACTIONS SHOULD BE TRANSFERRED TO THE DISTRICT OF DELAWARE UNDER 28 U.S.C. § 1404(a). ......................................................5

     A.     Legal Standard for Transfer ......................................................................5

     B.     These Texas Actions Could Have Been Brought in the District of Delaware.........6

     C.     Transfer to the District of Delaware Would Further the Interest of Justice............7

            1.     VLSI's efforts to forum shop, standing alone, warrant transfer. ................7

            2.     Transfer to Delaware, where VLSI's first-filed action against Intel is pending, would promote judicial efficiency. ..............................................10

     D.     The District of Delaware Is Clearly More Convenient Than this District for Adjudicating the Parties' Ongoing Patent Disputes................................................13

            1.     The public interest factors favor transfer. ..................................13

            2.     The private interest factors either favor transfer or are neutral. ................15

IV.    CONCLUSION.....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alexander v. Franklin Resources, Inc.*,
  2007 WL 518859 (N.D. Cal. Feb. 14, 2007) ...........................................................7

*Aliano v. Quaker Oats Co.*,
  2017 WL 56638 (N.D. Ill. Jan. 4, 2017) .................................................................17

*Andrade v. Chojnacki*,
  934 F. Supp. 817 (S.D. Tex. 1996) ...........................................................................7

*AT & T Intellectual Property I, L.P. v. Cox Communications, Inc.*,
  2015 WL 4148239 (D. Del. July 9, 2015) .................................................................7

*Auto-Drill, Inc. v. National Oilwell Varco, L.P.*,
  2016 WL 6909479 (W.D. Tex. Jan. 28, 2016) ........................................................19

*Aventis Pharmaceuticals Inc. v. Teva Pharmaceuticals USA Inc.*,
  2007 WL 2823296 (E.D. Tex. Sept. 27, 2007) ..............................................8-9, 12

*Byerson v. Equifax Information Services, LLC*,
  467 F. Supp. 2d 627 (E.D. Va. 2006) ......................................................................20

*Calamp Wireless Networks Corp. v. Orbcomm, Inc.*,
  2016 WL 9150694 (E.D. Va. 2016).....................................................................10-11

*DataQuill, Ltd. v. Apple Inc.*,
  2014 WL 2722201 (W.D. Tex. June 13, 2014) .........................................6, 14, 16

*DataTreasury Corp. v. First Data Corp.*,
  243 F. Supp. 2d 591 (N.D. Tex. 2003) ........................................6-7, 8, 10, 19-20

*Doubletree Partners, L.P. v. Land America American Title Co.*,
  2008 WL 5119599 (N.D. Tex. Dec. 3, 2008) .........................................................19

*Freehold Licensing, Inc. v. Aequitatem Capital Partners, LLC*,
  2018 WL 5539929 (W.D. Tex. Oct. 29, 2018) .......................................................15

*Garcia v. International Construction Equipment, Inc.*,
  -- F. App'x --, 2019 WL 1782665 .............................................................................9

*Good Technology Corp. v. MobileIron, Inc.*,
  2015 WL 1458091 (D. Del. Mar. 27, 2015) ............................................................12

*Idenix Pharmaceuticals, Inc. v. Gilead Sciences, Inc.*,
  2014 WL 12782106 (D. Mass. June 30, 2014).......................................................17

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009).........................................................................16

*In re Medrad, Inc.*,
215 F.3d 1341 (Fed. Cir. 1999).........................................................................20

*In re Microsoft Corp.*,
630 F.3d 1361 (Fed. Cir. 2011)...........................................................................9

*In re Nintendo Co.*,
589 F.3d 1194 (Fed. Cir. 2009).........................................................................14

*In re TS Tech USA Corp.*,
551 F.3d 1315 (Fed. Cir. 2008)...........................................................................8

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) ............................................................... 5-6, 13, 15, 16

*In re Volkswagen of America, Inc.*,
545 F.3d 304 (5th Cir. 2008) ....................................................................6, 8, 15

*In re Volkswagen of America, Inc.*,
566 F.3d 1349 (Fed. Cir. 2009).........................................................................10

*In re WMS Gaming Inc.*,
564 F. App'x 579 (Fed. Cir. 2014) ...................................................................14

*In re Zimmer Holdings, Inc.*,
609 F.3d 1378 (Fed. Cir. 2010)...........................................................................9

*In re ZTE (USA) Inc.*,
890 F.3d 1008 (Fed. Cir. 2018)...........................................................................5

*Infineon Technologies AG v. Fairchild Semiconductor International, Inc.*,
2009 WL 3150986 (D. Del. Sept. 30, 2009).................................................. 12-13

*Intercontinental Transporation Co. & Maritime Overseas Corp.
v. Sea-Land Services, Inc.*, 1969 WL 173718 (S.D.N.Y. May 23, 1969)................................7

*Legalforce, Inc. v. Legalzoom.com, Inc.*,
2018 WL 6179319 (C.D. Cal. Nov. 27, 2018)........................................................9

*PPS Data, LLC v. Diebold, Inc.*,
2012 WL 1884655 (D. Utah May 22, 2012).......................................................8, 9

*Robinson v. Hillcrest Baptist Medical Center*,
2009 WL 4639901 (W.D. Tex. Nov. 30, 2009).......................................................6

*TC Heartland LLC v. Kraft Foods Group Brands LLC,*
    137 S. Ct. 1514 (2017) ...................................................................................6

*U.S. Ethernet Innovations, LLC v. Acer, Inc.,*
    2010 WL 2771842 (E.D. Tex. July 13, 2010) .......................................12

*U.S. Ethernet Innovations, LLC v. Ricoh Americas Corp.,*
    2013 WL 12141402 (E.D. Tex. Mar. 21, 2013) ....................................19

*Uniloc USA Inc. v. Box, Inc.,*
    2018 WL 2729202 (W.D. Tex. June 6, 2018) ............................5, 10, 15

*Valeo, Inc. v. Federal-Mogul Corp.,*
    2013 WL 8480673 (W.D. Tex. Oct. 17, 2013) .......................................16

*VLSI Technology LLC v. Intel Corp.,*
    2018 WL 5342650 (D. Del. Oct. 29, 2018) ........................................3, 8

*Westberry v. GusTech Communications, LLC,*
    2018 WL 3548869 (N.D. Tex. July 24, 2018) .......................................10

*Whistler Group, Inc. v. PNI Corp.,*
    2003 WL 22939214 (N.D. Tex. Dec. 5, 2003) ............................ *passim*

*Wiley v. Gerber Products Co.,*
    667 F. Supp. 2d 171 (D. Mass. 2009) .............................................. 16-17

## STATUTES, RULES, AND REGULATIONS

28 U.S.C. § 1404(a) ....................................................................... *passim*

Fed. R. Civ. P. 41(a)(1)(A)(i) .................................................................5

Fed. R. Civ. P. 45(c)(1)...........................................................................19

## I.      INTRODUCTION

Once a plaintiff chooses a proper forum and a federal judge is assigned to preside over the case, the plaintiff should not be allowed to "trade in" that judge for another simply because it is unhappy with the assigned judge's rulings.  Yet, that is precisely what VLSI Technology LLC ("VLSI") has attempted to do here.  Apparently disappointed with how another judge was adjudicating the two patent infringement suits that it had filed against Intel Corporation ("Intel") in the District of Delaware, VLSI dismissed one of the two cases (involving six patents), and then immediately re-filed it here (along with two more patents) as these three cases.

That extraordinary step—taken just weeks after Judge Connolly dismissed certain of VLSI's infringement claims in the first Delaware case, which likely would have led to dismissal of VLSI's similar claims in the second case, and just one week after a case narrowing conference in which Judge Connolly *sua sponte* inquired about Intel's pending motion to consolidate the two Delaware cases—amounts to improper forum shopping.  Intel accordingly seeks to transfer venue to Delaware pursuant to 28 U.S.C. § 1404(a).

To be clear, Intel does not object to venue in this District as a categorical matter.  Intel has facilities here, pays taxes here, and is proud of its relationship with this District.  As such, when cases belong here, Intel will defend them willingly.  But each case should be evaluated on an individual basis, and the extraordinary and troubling facts here clearly warrant transfer of these three related cases back to the District of Delaware, where they can re-join VLSI's other pending case against Intel.

## II.      BACKGROUND

### A.      The Parties

VLSI is a non-practicing entity formed in Delaware in 2016 by New York hedge fund Fortress Investment Group LLC ("Fortress").  (Ex. 1 [VLSI Cert. Form.]; No. 1:18-cv-00966

("*Del. I*"), D.I. 24 ¶ 3.)[1]  VLSI, which does not make or sell any products, has its registered

office in Wilmington, Delaware, and claims to maintain a "primary office" in Illinois.  (Ex. 3

[*Del. I*, VLSI Resp. to Rog. 7]; *Del. I*, D.I. 24 ¶ 5.)  VLSI's CEO, Michael Stolarski—a patent

attorney—is the company's sole employee and resides in the Chicago area.  (*Del. I*, D.I. 24 ¶ 5.)

Intel, a Delaware corporation, is a leader in the design and development of semiconductor

products.  Intel's worldwide headquarters are and have always been in Santa Clara, California,

where it has more than 6,600 employees.  (Declaration of Thomas Herrgott ("Herrgott Decl.")

¶ 5.)  Although Intel has one of its numerous U.S. facilities in this District (in Austin), no portion

of any accused product is manufactured in Texas; rather, all the accused products were designed,

developed, and manufactured in Oregon, Arizona, and/or Israel.  (*Id*. ¶¶ 6-8.)

### B.  VLSI's Forum Shopping and Piecemeal Litigation Against Intel

Since its formation, VLSI's only apparent business activity has been to sue Intel in the

multiple cases detailed below.

### 1.  First Action Filed:  The California Action

On October 2, 2017, VLSI sued Intel in the Northern District of California, asserting

eight patents against Intel's microprocessors.  *VLSI Tech. LLC v. Intel Corp.*, No. 5:17-cv-05671

(N.D. Cal.) ("California Action").  VLSI lost nearly every issue brought before the California

court, and in March 2019, agreed to stay the California Action in its entirety after the Patent

Office instituted *inter partes* review on six of the eight asserted patents.  (*Cal. Action*, D.I. 253,

261.)

---

[1]  VLSI's parent company, CF VLSI Holdings LLC, is a privately-held Delaware company.  (Ex.
2 [CF VLSI Holdings Cert. Form.].)

## 2.      Second Action Filed:  The Delaware I Action

On June 28, 2018, VLSI filed suit against Intel in the District of Delaware, asserting five more patents, in a case assigned to Judge Connolly.  *VLSI Tech. LLC v. Intel Corp.*, No. 1:18-cv-00966 (D. Del.) ("Delaware I Action").  Seeking to conserve judicial resources and promote the convenience of the parties and witnesses, Intel sought to transfer that case to the Northern District of California for potential consolidation with the then-active California Action.  VLSI opposed, insisting that patent litigation between the parties belonged in Delaware and arguing that the parties' and witnesses' strong Delaware contacts weighed against transfer.  (Declaration of Gregory H. Lantier ("Lantier Decl.") ¶ 6.)  For example, VLSI said:

- "[T]here is no dispute that the District of Delaware is an appropriate venue in which to litigate the instant case, as both parties are Delaware corporations."  (*Del. I*, D.I. 26, at 3.)

- "VLSI's reasons for filing in this district are rational and legitimate.  This district is more convenient for VLSI's witnesses in this case[] ... ."  (*Id.* at 3-4.)

- "Here, moreover, both VLSI and Intel are Delaware corporations, and 'Delaware has a strong interest in adjudicating disputes among its corporate citizens.'"  (*Id.* at 20.)

To support these and other statements, VLSI submitted the declaration of its Chicago-based CEO, Mr. Stolarski.  Mr. Stolarski stated that (1) "it would be far more logistically and financially convenient for [him] to travel to Delaware for trial or any other court proceeding," and (2) he was "not aware of any VLSI witnesses who would be unwilling or unavailable to travel to the District of Delaware for trial or any other court proceeding."  (*Id.* D.I. 24 ¶¶ 8-9.)

After considering these arguments and declaration testimony, Judge Connolly denied Intel's motion in a detailed memorandum opinion evaluating, *inter alia*, the nature and location of the parties' relevant evidence, and finding that VLSI's choice of forum in Delaware deserved "paramount" consideration under Third Circuit law.  *VLSI Tech. LLC v. Intel Corp.*, 2018 WL 5342650, at *2, *6 (D. Del. Oct. 29, 2018).

Since then, Judge Connolly has acquired additional experience with the parties' patent disputes and the relevant technology, including by (1) presiding over a case narrowing conference in April 2019 during which the parties covered the asserted patents and related discovery issues, and which resulted in Judge Connolly ordering VLSI to reduce its asserted claims by 70% (within four days); and (2) considering (and granting) Intel's motion to dismiss certain of VLSI's willful and indirect infringement claims.  (Ex. 4 [*Del. I*, 4/3/19 Hr'g Tr.]; *Del. I*, D.I. 110 (order on Intel's motion to dismiss), 136 (order requiring VLSI to narrow claims).)  Judge Connolly will gain additional experience during the *Markman* process, which begins next week with VLSI serving its opening brief.  (*Del. I*, D.I. 40 (scheduling order).)  Trial is currently set for November 2020.

### 3.     Third Action Filed:  The Delaware II Action

On March 1, 2019—the same day VLSI agreed to stay the California Action—VLSI filed another suit in Delaware, in which it asserted six new patents against many of the same Intel microprocessors already accused in the Delaware I Action.  *VLSI Tech. LLC v. Intel Corp.*, 1:19-cv-00426 (D. Del.) ("Delaware II Action").  That case was also assigned to Judge Connolly.

After several weeks of litigating that case, however, VLSI suddenly abandoned it, presumably because it was unhappy with several of Judge Connolly's rulings.  ***First***, as noted above, in late March 2019, Judge Connolly dismissed certain of VLSI's willful and indirect infringement claims in the Delaware I Action.  (*Del. I*, D.I. 110.)  The next day, Intel informed VLSI that, for the same reasons articulated in Judge Connolly's dismissal order, Intel would move to dismiss VLSI's nearly identical claims asserted in the Delaware II Action.  (Ex. 5 [3/27/19 Email].)  ***Second***, also in late March 2019, Intel moved to consolidate the Delaware I and II Actions given the substantial overlap in witnesses, evidence, technology, and accused products.  (*Del. II*, D.I. 8.)  And at the April 2019 case narrowing conference in the Delaware I

Action, Judge Connolly inquired *sua sponte* about the status of that then-pending motion.  (Ex. 4 [*Del. I*, 4/3/19 Hr'g Tr.] at 43:13-44:16.)

Faced with potential consolidation and dismissal of its claims in the Delaware II Action—and just one day after receiving Intel's reply in support of its motion to consolidate—VLSI unilaterally dismissed the Delaware II Action on April 11, 2019.  (*Del. II*, D.I. 15.)[2]

### 4.    Fourth, Fifth, and Sixth Actions Filed:  The Texas Actions

*That same day*, VLSI filed these three related cases in this Court.  *VLSI Tech. LLC v. Intel Corp.*, Nos. 6:19-cv-00254, -00255, -00256 (W.D. Tex.) ("Texas Actions").  In these cases, VLSI has asserted the same six patents formerly asserted in the Delaware II Action, as well as two other patents, against many of the same Intel products accused in the Delaware I Action.

## III.    THE TEXAS ACTIONS SHOULD BE TRANSFERRED TO THE DISTRICT OF DELAWARE UNDER 28 U.S.C. § 1404(A).

### A.    Legal Standard for Transfer

Under 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought" "in the interest of justice."  In this District, a motion to transfer venue under § 1404(a) involves a two-step analysis.  *First*, courts decide whether the case could have been properly brought in the forum to which transfer is sought, an inquiry governed by Federal Circuit law.  *Uniloc USA Inc. v. Box, Inc.*, 2018 WL 2729202, at *1 & n.2 (W.D. Tex. June 6, 2018) (citing *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1012 (Fed. Cir. 2018)).  *Second*, courts consider certain factors to decide whether transfer would promote the interest of justice and/or the convenience of the parties and witnesses, an inquiry governed by Fifth Circuit law.  *Id.*; *see also In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam) ("*Volkswagen I*").  "Although these private and public factors apply to most transfer

---

[2]  Because Intel had not yet responded to the complaint in the Delaware II Action, VLSI was able to dismiss the case without court approval.  *See* Fed. R. Civ. P. 41(a)(1)(A)(i).

cases, 'they are not necessarily exhaustive or exclusive,' and no single factor is dispositive."
*Robinson v. Hillcrest Baptist Med. Ctr.*, 2009 WL 4639901, at *2 (W.D. Tex. Nov. 30, 2009)
(quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) (en banc)
("*Volkswagen II*")).

Here, transfer is warranted because (1) VLSI could have brought—and did bring—these
Texas Actions in the District of Delaware; (2) transfer would promote the interest of justice by
redressing VLSI's improper forum shopping and allowing these cases to proceed with the
Delaware I Action in a coordinated fashion; and (3) the relevant factors confirm that the District
of Delaware is "clearly more convenient" than this District for adjudicating the parties' ongoing
patent disputes. *DataQuill, Ltd. v. Apple Inc.*, 2014 WL 2722201, at *2 (W.D. Tex. June 13,
2014) (citing *Volkswagen II*, 545 F.3d at 314 & n.10).

**B.    These Texas Actions Could Have Been Brought in the District of Delaware.**

Intel is incorporated in Delaware; for that reason alone, each of the Texas Actions "could
have been brought" in that District. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S.
Ct. 1514, 1517 (2017). In fact, VLSI ***already filed*** essentially the same case there (the
Delaware II Action).

### C.     Transfer to the District of Delaware Would Further the Interest of Justice.

### 1.     VLSI's efforts to forum shop, standing alone, warrant transfer.

The facts underlying VLSI's decision to file in this District reveal an improper attempt to leverage the venue-selection process for forum-shopping purposes—which weighs heavily in favor of transfer to Delaware in the interest of justice.  *See DataTreasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 593 (N.D. Tex. 2003) ("[I]t is well established that 'the interest of justice' is an important factor in the transfer analysis.").

When previously opposing Intel's motion to transfer the Delaware I Action to California, VLSI portrayed Delaware as a preferred forum in which to litigate the parties' patent disputes. Indeed, VLSI chose to file the Delaware II Action there as well.  Only ***after*** receiving rulings from Judge Connolly (that it apparently did not like) did VLSI abruptly change course by dismissing the Delaware II Action and re-filing in this District.  VLSI's attempt to maneuver venue out of Delaware—after previously ***opposing*** transfer out of that same District, and after receiving several adverse rulings in that District—can only be described as "forum shopping with a vengeance."  *Intercont'l Transp. Co. & Maritime Overseas Corp. v. Sea-Land Servs., Inc.*, 1969 WL 173718 (S.D.N.Y. May 23, 1969) ("To bring an action in this district in the hope of obtaining the benefit of a more favorable rule of law than now obtains in the district where [plaintiff] first elected to sue is forum shopping with a vengeance."); *see also Alexander v. Franklin Res., Inc.*, 2007 WL 518859, at *4 (N.D. Cal. Feb. 14, 2007) (inferring forum shopping "where the same plaintiff represented by the same law firm filed a similar lawsuit in New Jersey, and after receiving unfavorable rulings from that court, filed the instant case"); *cf. Andrade v. Chojnacki*, 934 F. Supp. 817, 826 (S.D. Tex. 1996) (transferring claims under § 1406 and noting that "Plaintiffs' voluntary dismissal of these actions in the Western District of Texas and the subsequent filing of a lawsuit in the Southern District strongly suggest forum-shopping," and that

"[v]enue rules were designed precisely in order to prevent such conduct" (footnote omitted));

*AT & T Intellectual Prop. I, L.P. v. Cox Commc'ns, Inc.*, 2015 WL 4148239, at *1 n.2 (D. Del.

July 9, 2015) (finding "bad faith" where, when a party wants "to litigate in Delaware, it takes one

position," and when it "would prefer to litigate elsewhere, it takes a different position").

To the extent that VLSI's choice of venue is owed deference at all,[3] it is to VLSI's ***first***

***choice*** (i.e., Delaware), and not its second choice of this District.  Indeed, federal courts in Texas

and elsewhere routinely transfer second-filed, forum-shopped cases under similar circumstances.

For example, in *DataTreasury Corp. v. First Data Corp.*, the patentee originally filed suit in the

Eastern District of Texas against several groups of defendants, and then voluntarily dismissed its

case against certain defendants and re-filed against them in the Northern District of Texas.

243 F. Supp. 2d at 592-93.  The Northern District transferred the case back to the Eastern

District, noting that while "it is one thing to give weight to plaintiff's initial choice of forum," it

is quite another to give weight to a plaintiff's "second choice."  *Id.* at 594 (internal quotation

marks omitted).  The court noted that "the timing" of the plaintiff's second suit was "suspect"

where the plaintiff unilaterally dismissed the first action "just five weeks after the presiding

judge ruled against plaintiff's counsel in another patent infringement action."  *Id.* at 597 n.4.

Similarly, in *PPS Data, LLC v. Diebold, Inc.*, 2012 WL 1884655 (D. Utah May 22,

2012), the patentee originally sued in Delaware.  When faced with a motion to transfer to Ohio,

the patentee voluntarily dismissed its Delaware suit and re-filed the same day in Utah.  *Id.* at *1.

The Utah court then dismissed the second-filed action in favor of the defendant's declaratory

---

[3]  "Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct
factor in the § 1404(a) analysis."  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir.
2008) (citing *Volkswagen II*, 545 F.3d at 314 n.10).  By contrast, Third Circuit law, which
governed Intel's earlier motion to transfer the Delaware I Action, requires giving the plaintiff's
choice of forum "paramount" consideration.  *VLSI*, 2018 WL 5342650, at *2, *6.

judgment action subsequently filed in Ohio, finding that the patentee's re-filed suit was motivated by improper forum shopping. *Id.* at \*2 ("PPS Data already chose Delaware as the original forum for this lawsuit. By dismissing its case there, PPS Data should not be allowed to pick a second forum for its suit ... ."); *see also Aventis Pharm. Inc. v. Teva Pharm. USA Inc.*, 2007 WL 2823296, at \*1-2 (E.D. Tex. Sept. 27, 2007) (transferring second-filed case to New Jersey, where plaintiff's first-filed case on different patents was pending, in part because plaintiff's second-filed case was brought less than a week after the Federal Circuit affirmed the New Jersey court's denial of plaintiff's motion for a preliminary injunction).[4]

Here, VLSI chose Delaware as the forum in which to resolve its disputes with Intel concerning the asserted patents. VLSI should not be permitted to shield itself from potential adverse rulings as to those patents simply by dismissing its claims in Delaware and asserting the same claims in a different court. Under these circumstances, the only way to avoid improper forum shopping is to transfer the Texas Actions back to Delaware. *See In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (granting mandamus and directing transfer under Fifth Circuit law to "ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's attempt at manipulation"); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir.

---

[4]  *PPS Data* and *Aventis Pharmaceuticals* were decided based on first-to-file principles. *See PPS Data*, 2012 WL 1884655, at \*1; *Aventis Pharm.*, 2007 WL 2823296, at \*1. That doctrine also would have supported dismissal or transfer of these cases had VLSI dismissed the Delaware II Action **after** Intel answered and counterclaimed, because Intel's declaratory judgment counterclaims would have been first-filed as compared to these cases. But, by unilaterally dismissing the Delaware II Action before Intel responded, VLSI effectively prevented the first-to-file rule from taking effect.

2010) (granting mandamus and directing transfer under Fifth Circuit law where plaintiff was trying to "game the system").[5]

### 2. Transfer to Delaware, where VLSI's first-filed action against Intel is pending, would promote judicial efficiency.

For the reasons stated above, transfer is warranted in the interest of justice based solely on VLSI's improper forum shopping.  The interest of justice also "favors resolving related patent cases in the same forum whenever possible," so as to "prevent an extravagantly wasteful and useless duplication of the time and effort of the federal courts by the simultaneous trial of two complex and elaborate cases involving substantially the same factual issues."  *Whistler Grp., Inc. v. PNI Corp.*, 2003 WL 22939214, at *5 (N.D. Tex. Dec. 5, 2003) (internal quotation marks omitted); *see also In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (stating that "multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice").[6]

Here, transfer to Delaware would promote judicial efficiency and further the interest of justice given that Judge Connolly has already acquired extensive experience with the parties, the

---

[5]  Courts have characterized conduct similar to VLSI's here not just as "forum shopping," but also as "judge shopping"—a particularly troubling abuse of judicial procedure that likewise warrants transfer. *See Legalforce, Inc. v. Legalzoom.com, Inc.*, 2018 WL 6179319, at *4-5 (C.D. Cal. Nov. 27, 2018) (where plaintiff "did not get the result it wanted in" a first forum and "dismissed that action and refiled the same case" in a second forum, holding that transfer back to the first forum was warranted both under § 1404(a) and the court's "inherent power to prevent judge-shopping," which "abuses the judicial process"); *cf. Garcia v. Int'l Constr. Equip., Inc.*, -- F. App'x --, 2019 WL 1782665 (Mem.), at *1 (5th Cir. Apr. 23, 2019) (per curiam) (after a plaintiff dismisses suit and re-files in the same district, permitting intra-district transfer to the judge who originally presided over the dismissed action in order "to prevent judge-shopping").

[6]  Some courts in this Circuit have addressed judicial economy "separately, rather than in the context of any of the private or public interest factors."  *Westberry v. GusTech Commc'ns, LLC*, 2018 WL 3548869, at *7 n.10 (N.D. Tex. July 24, 2018).  Others have addressed them under the "practical problems that make trial of a case easy, expeditious, and inexpensive" private interest factor.  *See Uniloc*, 2018 WL 2729202, at *4 (transferring case to forum in which plaintiff's litigation involving the same patents was pending).

relevant technology, and certain disputed issues through motion practice and multiple hearings in

the Delaware I Action, and will gain even more experience in the near future.  *See DataTreasury*,

243 F. Supp. 2d at 596 (transferring to forum with co-pending litigation because, "[g]iven the

progress of the … [transferee forum] litigation, that court is more prepared and better suited to

address the issues related to the patents-in-suit"); *Calamp Wireless Networks Corp. v. Orbcomm,*

*Inc.*, 2016 WL 9150694, at *3 (E.D. Va. 2016) (transferring to court that had "already considered

motions to dismiss" and was thus "familiar with the Parties and the basic subject matter of the

patents").  Indeed, the cases' significant overlap makes transfer especially compelling.

*First*, the Delaware I Action and the Texas Actions include many of the same accused

microprocessors; every Intel product accused of infringement in the Texas Actions is already

accused in the Delaware I Action.  (Lantier Decl. ¶¶ 17-18.)  Thus, the same Intel witnesses

having knowledge of those products are likely to testify in both sets of cases.  (*Id.* ¶¶ 19-22.)

*Second*, there is substantial overlap in the subject matter of the asserted patents between

the Delaware I and Texas Actions, including those directed to alleged power savings and

performance improvements in integrated circuits.  (*Id.* ¶ 15; *compare, e.g.*, *Del. I*, D.I. 001-2

('027 patent), *with 255 Action*, D.I. 001-2 ('522 patent), *and 255 Action*, D.I. 001-3 ('187

patent).)  Moreover, as VLSI previously conceded when opposing Intel's motion to transfer the

Delaware I Action to California, the patents all generally relate to "semiconductor technologies."

(*Del. I*, D.I. 26, at 16 ("[A]ll the patents relate broadly to semiconductor technologies[] ... .").)

*Third*, there is substantial overlap in issues that cut across the asserted patents.  For

example, given the overlap in accused products, damages experts in both sets of cases will likely

rely on the same legal theories and evidence.  Similarly, the patents asserted in Delaware and

Texas derive from the same third-party patent portfolio.  (Lantier Decl. ¶ 14.)  They therefore

share a common history relevant to a variety of issues, including ownership/standing and invalidity (including, for example, objective indicia of nonobviousness).

**Fourth**, two patents in the Texas Actions and one patent in the Delaware I Action name Marcus May as an inventor.  (*Compare Del. I*, D.I. 1-2 ('027 patent), *with 255 Action*, D.I. 1-2 ('522 patent), *and 255 Action*, D.I. 1-3 ('187 patent).)  This commonality in inventorship is significant, as VLSI itself contends that Intel had notice of the two Texas patents merely because the Delaware I Action involves a patent naming the same inventor "in the same area" of technology.  (*255 Action*, D.I. 1 ¶¶ 33, 67.)

This overlap in accused products, evidence, witnesses, and expert subject matter favors transfer to Delaware, where discovery into these and other issues is already well underway.  *See Whistler Grp.*, 2003 WL 22939214, at *5 (transferring co-pending suit where both cases "involve exactly the same parties; both involve an examination of prior radar detector art and the validity and scope of similar patents; both will involve overlapping witnesses; and both will involve substantially related questions of fact and, correspondingly, overlapping discovery" (numerals omitted)); *see also U.S. Ethernet Innovations, LLC v. Acer, Inc.*, 2010 WL 2771842, at *7 (E.D. Tex. July 13, 2010) (transferring suit involving "slightly different patents" where there were "similarities between the accused products" in the case and a previously litigated case in the transferee forum); *cf. Aventis Pharm.*, 2007 WL 2823296, at *2 (transferring under first-to-file rule a suit involving different patents where "[t]he same parties are involved" and "the identical product ... is accused of infringement"); *Good Tech. Corp. v. MobileIron, Inc.*, 2015 WL 1458091, at *8 (D. Del. Mar. 27, 2015) (transferring case where the patents in the two actions generally "relate to the same technical field" and "both patents list the same inventor").

At bottom, given the many overlapping areas between the two sets of cases and Judge Connolly's investment in the parties' dispute, transfer of the Texas Actions to Delaware would avoid judicial inefficiencies and advance the interest of justice.  *See Whistler Grp.*, 2003 WL 22939214, at *5 (noting "[p]iecemeal litigation in the complex and technical area" of patent law is "extravagantly wasteful" and "especially undesirable," and the type of inefficiency § 1404(a) was designed to prevent (internal quotation marks omitted)); *cf. Infineon Techs. AG v. Fairchild Semiconductor Int'l, Inc.*, 2009 WL 3150986, at *5 (D. Del. Sept. 30, 2009) (granting motion to amend to add patents asserted in another forum, and noting the wastefulness of "simultaneously litigating … two cases five hundred miles apart, potentially requiring the services of two juries and at least two judges, as well as two rounds of discovery, two sets of claim construction briefs, two *Markman* hearings, [and] two summary judgment motions").

### D.     The District of Delaware Is Clearly More Convenient Than this District for Adjudicating the Parties' Ongoing Patent Disputes.

As noted above, the extraordinary circumstances and improper forum shopping at issue here is reason enough to transfer these cases to Delaware, and is the primary issue before the Court.  Nevertheless, to the extent the Court considers the public and private interest factors, the majority of those factors either favor transfer or are neutral, and none overrides the compelling reasons favoring transfer to Delaware based on VLSI's efforts to forum shop.

#### 1.     The public interest factors favor transfer.

In assessing a transfer motion, courts typically consider the following public interest factors:  (1) administrative difficulties flowing from court congestion; (2) local interest in having localized interests decided at home; (3) familiarity of the forum with the law that will govern the case; and (4) avoidance of unnecessary problems of conflict of laws or in the application of foreign law.  *Volkswagen I*, 371 F.3d at 201.  These factors weigh in favor of transfer.

*First*, there are no administrative difficulties flowing from congestion in either Delaware or this District.  The Delaware I Action already has a trial date set just eighteen months from now, and Intel intends to renew its request to consolidate if these Texas Actions are transferred back to Delaware, with only a slight delay in that existing trial date.  Indeed, the efficiency of the Delaware courts is one reason VLSI argued that the parties' dispute belonged there in the first place.  (*Del. I*, D.I. 26, at 18-19 ("[G]iven … the corresponding relative lack of congestion in this District, this factor weighs against transfer.").)  Judge Connolly's existing familiarity with the technology and parties will only further increase efficiency, making it possible to move the cases forward expeditiously and reducing the risk of conflicting decisions on the overlapping legal and factual questions at issue.  In any event, VLSI "does not practice the [asserted] patent[s]" and is therefore "not in need of a quick resolution of this case because its position in the market is threatened."  *In re WMS Gaming Inc.*, 564 F. App'x 579, 581 (Fed. Cir. 2014) (granting mandamus to vacate denial of transfer under Fifth Circuit law).

*Second*, this District does not have a *unique* interest in deciding this case.  Indeed, in opposing Intel's motion to transfer the Delaware I Action, VLSI argued that *Delaware*—where VLSI was formed and Intel is incorporated—has a unique interest in the ongoing dispute between the parties.  (*Del. I*, D.I. 26, at 20 ("[B]oth VLSI and Intel are Delaware corporations, and 'Delaware has a strong interest in adjudicating disputes among its corporate citizens.'").)  Further, the design and development of the accused products/features occurred elsewhere, in Arizona, Oregon, and Israel.  And, although Intel sells the accused products nationwide, it enjoys "no special concentration of sales in the Western District of Texas."  *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (applying Fifth Circuit law and noting that, "[i]f the products were sold throughout the United States, as here, then the citizens of the venue chosen by the

plaintiff have no more or less of a meaningful connection to the case than any other venue"
(internal quotation marks omitted)); *DataQuill*, 2014 WL 2722201, at *4 ("The fact iPhones are
sold to Austin residents is largely irrelevant, as the mere presence of accused products in a
district does not create a local interest.").

**Finally**, this District and the District of Delaware are both familiar with patent law, and
there are no conflict of laws issues surrounding Intel's requested transfer.

Therefore, the public interest factors favor transfer.

### 2.     The private interest factors either favor transfer or are neutral.

Courts also typically address the following private interest factors in deciding a transfer
motion:  (1) practical problems that make trial of a case easy, expeditious, and inexpensive;
(2) the relative ease of access to sources of proof; (3) the cost of attendance for willing
witnesses; and (4) the availability of compulsory process to secure the attendance of witnesses.
*Volkswagen I*, 371 F.3d at 201.  These factors are neither exhaustive nor exclusive,
*Volkswagen II*, 545 F.3d at 314-15, particularly in cases like this one, where transfer is
predicated on forum shopping (as well as the judicial economy that would result by transferring
the case).  Indeed, transfer may be appropriate to promote justice "***even if the convenience of the
parties and witnesses calls for a different result***."  *Whistler Grp.*, 2003 WL 22939214, at *5; *see
also Freehold Licensing, Inc. v. Aequitatem Capital Partners, LLC*, 2018 WL 5539929, at *6
(W.D. Tex. Oct. 29, 2018) ("[A] court must engage in a flexible and individualized analysis in
ruling on a motion to transfer venue." (internal quotation marks omitted)).

At the time that VLSI filed the Delaware I Action, Intel argued that the most convenient
forum for the parties and witnesses was the Northern District of California, where Intel is
headquartered.  But now that the Delaware I Action has been proceeding before Judge Connolly

over the last eleven months, the calculus has changed.  As between Delaware and this District, the private interest factors either favor transfer to Delaware or are neutral.

*First*, as discussed above, the "practical problems that make trial of a case easy, expeditious and inexpensive" factor strongly supports transfer because litigating these cases in Delaware with VLSI's co-pending case would promote judicial economy.  *Supra* pp.10-13 & n.6; *Uniloc*, 2018 WL 2729202, at *4 (finding that this factor weighed in favor of transferring case to forum in which plaintiff's litigation involving the same patent was pending).

*Second*, the "relative ease of access to sources of proof" factor is neutral as between Delaware and this District.  As the Federal Circuit has explained, because "the bulk of the relevant evidence usually comes from the accused infringer, … the location of the defendant's documents tends to be the more convenient venue."  *DataQuill*, 2014 WL 2722201, at *3 (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).  Here the relevant evidence from Intel, including highly confidential specifications for the accused products, is primarily located at Intel's facilities in Arizona, Oregon, Israel, Washington, and California—not here in this District.  (Herrgott Decl. ¶ 9.)  And, although Intel has one of its many U.S. facilities in Austin, that facility plays no role in the design, development, or manufacture of the accused products, and does not serve as a document repository for the accused products.  (*Id.* ¶¶ 6-9.) *See DataQuill*, 2014 WL 2722201, at *3 (transferring where "documents relevant to the development and creation of [the accused] products are likely to be found … , even if some of the documents may be equally accessible electronically from Austin"); *Valeo, Inc. v. Federal-Mogul Corp.*, 2013 WL 8480673, at *3 (W.D. Tex. Oct. 17, 2013) (where defendant's place of business in the forum was "unrelated to the products at issue," transferring the case to forum where defendant was headquartered).

*Third*, the "cost of attendance for willing witnesses" factor is neutral.[7]  Critically, "the proper inquiry is not whether [this District] is more convenient than [Delaware] in the abstract but instead whether sanctioning a second, nearly identical action here is more convenient than transferring the case for the purpose of consolidation."  *Wiley v. Gerber Prods. Co.*, 667 F. Supp. 2d 171, 173 (D. Mass. 2009).  In view of the substantial overlap detailed above, the Delaware I Action and these cases will involve many overlapping witnesses—including, at a minimum: (1) Intel engineers knowledgeable about the design and development of the accused products; (2) Mr. Stolarski, VLSI's sole employee; and (3) employees of Fortress, the New York hedge fund that created VLSI and was involved in acquiring the patents.  (Lantier Decl. ¶¶ 19-20.)

Because many of these same party and non-party witnesses will likely testify in the Delaware I Action, it would impose significant additional costs to require them to travel to and testify here as well.  *See Whistler Grp.*, 2003 WL 22939214, at *4 (transferring to forum where other litigation involving the same "patented devices" was pending because the "witnesses in both cases will overlap"); *Aliano v. Quaker Oats Co.*, 2017 WL 56638, at *3 (N.D. Ill. Jan. 4, 2017) (transferring to forum in which related litigation was pending because "witnesses will be deposed and expected to testify … concerning the same subject matter as this case").  Thus, retaining these cases in this District is likely to multiply, not minimize, the inconvenience to such witnesses.  In this sense, transfer would promote the convenience of the witnesses by preserving the possibility of consolidation with the Delaware I Action.  *See Idenix Pharm., Inc. v. Gilead Scis., Inc.*, 2014 WL 12782106, at *4-5 (D. Mass. June 30, 2014) (transferring patent case to where other cases were pending in part because "consolidation of the pending cases may result in

---

[7]  When analyzing this factor, the Fifth Circuit holds that, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Volkswagen I*, 371 F.3d at 204-05.

less travel for all witnesses," and noting "it is the possibility—rather than the certainty—of consolidation that courts consider in the transfer analysis").

Even setting aside the possibility of consolidation, relevant witnesses are scattered across the country such that the overall convenience of the witnesses does not favor one venue over any other. With respect to party witnesses, most relevant Intel employee witnesses reside in Arizona, Oregon, and Israel (Herrgott Decl. ¶ 8), and no VLSI fact witnesses resides in this District. Indeed, VLSI's CEO, Mr. Stolarski, resides in Illinois, and he stated in opposition to Intel's previous motion to transfer that (1) it "would be far more logistically and financially convenient for [him] to travel to Delaware for trial or any other court proceeding," and (2) he was "not aware of any VLSI witnesses who would be unwilling or unavailable to travel to the District of Delaware for trial or any other court proceeding." (*Del. I*, D.I. 24 ¶¶ 8-9.)

Third-party witnesses are also diffusely located. The employees of Fortress who may be called to provide testimony, for example, live in New York, Washington, D.C., and California. (Lantier Decl. ¶ 20; Ex. 6-10 [LinkedIn Profiles of Fortress Employees].) Other potential witnesses are similarly dispersed: in the Delaware I Action, the parties have subpoenaed third-party witnesses residing all over the country, including in California (e.g., Cadence Design Systems, Inc.; Qualcomm Incorporated; HP Inc.), New York (e.g., Fortress; IBM), New Jersey (Samsung Electronics America, Inc.), Illinois (e.g., GKC Partners II, LLP; Gerchen Keller Capital, LLC), Washington (Microsoft Corporation), Pennsylvania (Crane Payment Innovations Inc.), and North Carolina (Lenovo (United States) Inc.). (Lantier Decl. ¶¶ 21-22.)

And although multiple named inventors of the patents asserted in the Texas Actions live in Austin, that fact does not weigh against transfer. As an initial matter, all but two of the named inventors on the six patents formerly asserted in the Delaware II Action live in Austin (*id.* ¶ 7),

and yet VLSI initially chose to assert those patents in Delaware, not here.  Those inventors'

residence in this District did not deter VLSI from originally litigating the patents in Delaware,

and it does not defeat transfer back to Delaware now.  In any event, two of the Austin-based

inventors (Robert Ehrlich and Olga Lu) are now Intel employees, as is another inventor living in

Arizona (Kevin Locker).  (Herrgott Decl. ¶ 10.)  As party employees, these potential witnesses'

convenience is afforded minimal weight.  *Whistler Grp.*, 2003 WL 22939214, at *3 & n.2.

Thus, beyond the significant inconvenience that would result by simultaneously litigating

part of the parties' patent infringement dispute in Delaware and another part of their dispute here,

the convenience of the witnesses factor is neutral.  *U.S. Ethernet Innovations, LLC*, 2013 WL

12141402, at *4 (where third-party witnesses resided in multiple districts, finding this transfer

factor neutral); *see also Auto-Drill, Inc. v. Nat'l Oilwell Varco, L.P.*, 2016 WL 6909479, at *8

(W.D. Tex. Jan. 28, 2016) ("Courts have uniformly refused to allow § 1404(a) convenience

transfer to be a 'battle of numbers.'").

*Finally*, the "availability of compulsory process" factor is also neutral.  While this Court

has subpoena power over relevant persons residing in this District, it lacks such power over all

other third-party witnesses, including the named inventors that reside outside of Texas and

multiple other third-party witnesses.  *See* Fed. R. Civ. P. 45(c)(1).  Further, to the extent any

witness residing in this District is unwilling to attend trial in Delaware voluntarily, the parties

can secure admissible testimony from those witnesses via deposition.

In sum, the private interest factors considered individually either support transfer or are

neutral.  And taken collectively, the private interest factors support transfer to Delaware, and

certainly do not override a conclusion that transfer is warranted in the interest of justice based on

VLSI's forum-shopping tactics and the efficiency gained by transferring these cases.  Indeed,

other courts have transferred cases where the private interest factors were neutral (or even weighed against transfer) but the interest of justice favored transfer, as it does here. *See Doubletree Partners, L.P. v. Land Am. Am. Title Co.*, 2008 WL 5119599, at *5-6 (N.D. Tex. Dec. 3, 2008) (finding "defendants have not clearly demonstrated that the convenience of the parties and witnesses[] … favors transfer," but concluding that "the 'interest of justice,' standing alone, favors transfer"); *DataTreasury*, 243 F. Supp. 2d at 595 (transferring case in the interest of justice notwithstanding "the neutrality of the[] private interest factors"); *see also In re Medrad, Inc.*, 215 F.3d 1341 (Table) (Fed. Cir. 1999) (nonprecedential) (refusing to disturb decision to transfer case from Pennsylvania to Ohio where the district court found "the interest of justice and the public interests of judicial administration and economy warranted a transfer," even though defendant "had not established Ohio to be a more convenient forum"); *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 637 (E.D. Va. 2006) ("In some cases, the interest of justice may be decisive in ruling on a transfer motion, even though the convenience of the parties and witnesses point in a different direction.  This is just such a case.  The Plaintiffs' choice of forum, the convenience of the parties, and the convenience of the witnesses each weigh against transfer, but not so strongly that they outweigh the interest of justice." (citations and internal quotation marks omitted)).

## IV.   CONCLUSION

For the foregoing reasons, Intel respectfully requests transfer of the Texas Actions to the District of Delaware so that they can be considered for consolidation with the Delaware I Action.

Dated: May 20, 2019                                Respectfully submitted,

                                                   /s/ J. Stephen Ravel
William F. Lee (admitted *Pro Hac Vice*)           J. Stephen Ravel
Louis W. Tompros (admitted *Pro Hac Vice*)         Texas State Bar No. 16584975

Kate Saxton (admitted *Pro Hac Vice*)
WILMER CUTLER PICKERING HALE
  & DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Email: william.lee@wilmerhale.com
Email: louis.tompros@wilmerhale.com
Email: kate.saxton@wilmerhale.com


Gregory H. Lantier (admitted *Pro Hac Vice*)
Amanda L. Major (admitted *Pro Hac Vice*)
WILMER CUTLER PICKERING HALE
  & DORR LLP
1875 Pennsylvania Avenue
Washington DC 20006
Tel: (202) 663-6000
Email: gregory.lantier@wilmerhale.com
Email: amanda.major@wilmerhale.com

Alexis Pfeiffer (admitted *Pro Hac Vice*)
WILMER CUTLER PICKERING HALE
  & DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Tel: (650) 858-6052
Email: alexis.pfeiffer@wilmerhale.com

KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
Email: steve.ravel@kellyhart.com

James E. Wren
Texas State Bar No. 22018200
1 Bear Place, Unit 97288
Waco, Texas 76798
Tel: (254) 710-7670
Email: james.wren@baylor.edu

Sven Stricker
Texas State Bar No. 24110418
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6464
Email: sven.stricker@kellyhart.com

*Attorneys for Intel Corporation*

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(i), counsel for Intel has conferred with counsel for VLSI in a good-faith effort to resolve the matter presented herein.  Counsel for VLSI opposes the instant Motion and asserts that the relevant § 1404(a) factors do not favor transfer.

*/s/ J. Stephen Ravel*
J. Stephen Ravel
Texas State Bar No. 16584975
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
Email: steve.ravel@kellyhart.com