# Exhibit 4

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                           - - -

 4
     VLSI TECHNOLOGY LLC,         :    CIVIL ACTION
 5                                :
                 Plaintiff,       :
 6                                :
        vs.                       :
 7                                :
     INTEL CORPORATION,           :
 8                                :
                 Defendant.       :    NO. 18-966 (CFC)
 9

10                           - - -

11                             Wilmington, Delaware
                               Wednesday, April 3, 2019
12                             2:07 o'clock, p.m.

13                           - - -

14   BEFORE:  HONORABLE COLM F. CONNOLLY, U.S.D.C.J.

15                           - - -

16   APPEARANCES:

17
             FARNAN LLP
18           BY:  MICHAEL J. FARNAN, ESQ.

19
                        -and-
20

21

22

23
                                   Valerie J. Gunning
24                                 Official Court Reporter

25
```

```
 1   APPEARANCES (Continued):

 2

 3            IRELL & MANELLA LLP
              BY:  BENJAMIN W. HATTENBACH, ESQ.,
 4                 CHRISTOPHER ABERNETHY, ESQ. and
                   AMY E. PROCTOR, ESQ.
 5                 (Los Angeles, California)

 6
              Counsel for Plaintiff
 7

 8
              MORRIS, NICHOLS, ARSHT & TUNNELL LLP
 9            BY:  JACK B. BLUMENFELD, ESQ. and
                   JEREMY TIGAN, ESQ.
10

11                 -and-

12
              WILMER CUTLER PICKERING HALE AND DORR LLP
13            BY:  WILLIAM F. LEE, ESQ.,
                   ALEXANDRA WELLS AMRHEIN, ESQ.
14                 (Boston, Massachusetts)

15
                   -and-
16

17            WILMER CUTLER PICKERING HALE AND DORR LLP
              BY:  AMANDA L. MAJOR, ESQ.
18                 (Washington, D.C.)

19
              Counsel for Defendant
20

21                 - - -

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2
 3              (Proceedings commenced in the courtroom,
 4     beginning at 2:07 p.m.)
 5
 6              THE COURT:  Good afternoon.  Please be seated.
 7              Mr. Farnan, how are you?
 8              MR. FARNAN:  Good.  Good afternoon, Your Honor.
 9     Michael Farnan on behalf of plaintiff.
10              With me today is Ben Hattenbach, Chris Abernethy
11     and Amy Proctor of Irell Manella.
12              THE COURT:  All right.  Welcome.
13              And then Mr. Tigan?
14              MR. TIGAN:  Good afternoon, Your Honor.
15              THE COURT:  Good afternoon.
16              MR. TIGAN:  Jeremy Tigan with Morris Nichols on
17     behalf of Intel.
18              I'm joined by three of my colleagues from Wilmer
19     Hale, Bill Lee, Amanda Major and Alexandra Amrhein.  Also
20     from our client, Masud Roshan, and in the back, my partner,
21     Jack Blumenfeld.
22              THE COURT:  All right.  So I can't recall
23     whether I put this on the calendar or it was a remnant from
24     a prior scheduling order, but it is in the scheduling order
25     a status conference.
```

1           Was this specifically asked for at the last
2  scheduling conference?
3           MR. HATTNEBACH:  Yes Your Honor.  This is
4  Mr. Hattenbach.  It was requested that we discuss whether to
5  have case narrowing at this stage.  We thought we would have
6  better information about the case by now.
7           THE COURT:  Okay.  So hopefully, you all do.  So
8  who is going to speak first?
9           MR. HATTNEBACH:  I would be happy to speak on
10 behalf of VLSI.
11          THE COURT:  And I guess what I'm looking for, so
12 is there a proposal?  Maybe it's stipulated.  Have you
13 reached agreement?
14          MR. HATTNEBACH:  No.  We're very far off.
15          THE COURT:  Okay.
16          MR. HATTNEBACH:  I think there are some
17 significant issues, including with the state of discovery
18 that we're prepared to discuss today.  We do have a
19 proposal, but it takes into account the due process
20 limitations the Courts have placed, the Federal Circuit has
21 placed on claim narrowing processes, and it takes into
22 account the state of discovery and the details of the
23 particular patents at issue here, and I'm prepared to
24 explain that today.
25          THE COURT:  All right.  Mr. Lee?

1    demonstrate, Your Honor, as specific as they were.
2              If I move to slide 11, there's also a question
3    of whether we're burdening the Court and wasting the Court's
4    resources.  Are we asking you to decide Markman, claim
5    limitations or construe limitations of Markman that will
6    never have any relevance to the case at all?  Are we asking
7    Your Honor to address summary judgment or Daubert issues
8    which will never have any relevance at all?
9              And it's for those reasons, Your Honor, that we
10   think that the proposal we made makes sense.  We think it's
11   consistent with what Your Honor did in Deere.  We think it's
12   consistent with what you see in the other jurisdictions as
13   the courts go to manage their docket.
14             The last question is just how many references
15   should we be allowed, and --
16             THE COURT:  Or combinations.
17             MR. LEE:  Or combinations.  And what you'll see
18   from most other, most of the orders is, it's a limitation to
19   references, so that the courts recognize that in many
20   circumstances to demonstrate obviousness, I need to combine
21   A and B and C.  And rather than require that you get in and
22   start counting, well, A plus B is one, A plus B plus C is
23   two, they say, we're going to limit you to a number of
24   references, which are easily counted, and they can then be
25   combined to make your invalidity contentions.  And that is,

1    we think, consistently the way it has been done.
2              So our suggestion, Your Honor, is that this is
3    the time to narrow their claims.  We think it has to be --
4    to go back to slide 4, we think it should come down to 15.
5    We should have 30 prior art references after Markman.  We
6    should bring it down to eight with 18.  We can then have
7    meaningful expert discovery.  We can address any pretrial
8    matters that we should before Your Honor.
9              My bet is if we did something like that, we'd
10   end up trying maybe five or six claims that claim a patent.
11   That's something that we could do.  That's something that
12   the jury could I think fairly decide.
13             The last point, Your Honor, is, this case is now
14   the sandwich case.  There was a California case.  There is
15   this case.  There is yet a third case.
16             THE COURT:  A motion to consolidate.  Right?
17             MR. LEE:  We've moved to consolidate.
18             THE COURT:  I guess they just filed today the
19   answering brief.  Is that right?
20             MR. LEE:  Yes.
21             MR. HATTNEBACH:  Yes.
22             THE COURT:  It was just handed to me as I was
23   walking out.
24             MR. LEE:  And I think the day before our reply
25   is due, April 10th.

1           THE COURT:  Are you are you objecting to
2    consolidation?
3           MR. HATTNEBACH:  Absolutely, Your Honor.  We
4    feel --
5           THE COURT:  That's all right.
6           MR. LEE:  Right.  And I should say, Your Honor,
7    that is another case with another set of patents, and
8    there's 141 asserted claims.  And there's, you know, with
9    three -- there have been three different cases.  I'm sure
10   they're going to say the 141 will come down.  But this is
11   one plaintiff, VLSI, who has acquired patents from a series
12   of folks suing one defendant.  And at some point there has
13   to be some limitation or some commonsensical way to narrow
14   what we're doing so we can resolve the core dispute.  Thank
15   you, Your Honor.
16          THE COURT:  All right.  Thank you.
17          MR. HATTNEBACH:  Could I respond briefly, Your
18   Honor?
19          THE COURT:  Yes, briefly.
20          MR. HATTNEBACH:  Thank you.
21          Let's see.  Just respond to things that counsel
22   specifically said.  They responded as we have to to our
23   infringement contentions.  How they actually responded to
24   the infringement contentions is shown on slide 24, if we
25   could get that up.

1         They responded to the infringement contentions
2    by literally listing virtually every limitation in the
3    claims and saying, that's not there, or you have not shown
4    that it's there.  They have not provided any meaningful
5    explanation in most cases about why they contend it's not
6    there.  And so again, as much as we are with their
7    invalidity contentions, we're at a loss to understand what
8    they're actually contending in this respect, and they are
9    asking us to make really crucial decisions about the future
10   of the case in the dark.
11        And he said I characterized the contentions.
12   Well, I would put it a different way.  I would say I've
13   shown you the contentions.  I showed you what they did in
14   the invalidity contentions with excerpts of them.  You can
15   see for yourself.  And here on slide 24 I'm showing you what
16   they've done on the noninfringement side of things, and it's
17   the same thing.  They've literally closed the claim
18   language, and then in the context of a sentence they've
19   said, we fail to identify or it's not there.  And they
20   provided quotes around the exact same elements, language of
21   the claim.  It's meaningless.
22             THE COURT:  I don't know that I find that very
23   compelling.  I mean, do you have an example of your
24   infringement -- do you have your corresponding
25   infringement --

```
 1              MR. HATTNEBACH:  Absolutely.  Can we go to that?
 2              THE COURT:  I mean, you are the plaintiff.  The
 3   burden is on you.
 4              MR. HATTNEBACH:  So, and I'm happy to show you
 5   that, and you'll see that there's quite a bit of a
 6   difference.  We're not just parroting the language of the
 7   claims.  I redacted them because I didn't know who would be
 8   in court, but we provided them with file paths to exactly
 9   the portion of the source code.
10              THE COURT:  We have a very, very suspicious
11   characters in the back of the courtroom.
12              MR. HATTNEBACH:  He looks pretty sketchy.
13              But we've provided file paths, the exact portion
14   of the source code module that we're pointing to.  We called
15   things out by name.  We provided schematics.
16              THE COURT:  Hold up.  Hold on.
17              MR. HATTNEBACH:  Sure.
18              THE COURT:  All right.  So you say the power
19   gating switch in the accused product comprises a control
20   port.  So isn't the response if you are the defendant, the
21   power gating switch does not comprise control port?  I mean,
22   I'm at a loss.  You know, what are you supposed to say when
23   you are proving a negative?
24              MR. HATTNEBACH:  So we pointed to exactly what
25   we say the control port is.
```

```
 1    discovery conference yet?
 2              MR. HATTNEBACH:  No.
 3              MR. TIGAN:  Yes, Your Honor.
 4              THE COURT:  I meant in this case.  Sorry.
 5              All right.  I am using the Magistrate or
 6    Magistrate Judge Fallon more liberally now with regard to
 7    discovery disputes, and especially doing cases that spend a
 8    lot of time in front of me.  So we'll see what we'll do
 9    about the discovery dispute.
10              Anything else?
11              MR. HATTNEBACH:  No.  Thank you, Your Honor.
12              MR. LEE:  No.  Thank you, Your Honor.
13              THE COURT:  All right.
14              (Hearing concluded at 3:20 p.m.)
15                         -  -  -
16
17
18
19
20
21
22
23
24
25
```