**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

VLSI TECHNOLOGY LLC,

                Plaintiff,

     v.

INTEL CORPORATION,

                Defendant.

C.A. No.  6:19-cv-00254-ADA

**INTEL CORPORATION'S MOTION TO DISMISS CLAIMS FOR**
**DIRECT AND INDIRECT INFRINGEMENT AND**
**ENHANCED DAMAGES BASED ON WILLFUL INFRINGEMENT**
**<u>UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)</u>**

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................... 1

II.    STATEMENT OF FACTS ................................................................................. 3

   A.    Background ................................................................................................ 3

   B.    VLSI's Legally Deficient Claim For Direct Infringement Of The '373 Patent .............. 4

   C.    VLSI's Legally Deficient Indirect Infringement Claims ................................................. 6

   D.    VLSI's Legally Deficient Enhanced Damages and Willful Infringement Allegations.... 7

III.    ARGUMENT ..................................................................................................... 7

   A.    Legal Standard.......................................................................................... 7

   B.    VLSI's Claims Concerning The '373 Patent Should Be Dismissed ............................... 8

   C.    VLSI's Claims For Indirect Infringement Should Be Dismissed ................................. 10

      1.    VLSI Fails To Sufficiently Plead That Intel Knew Of, Or Was Willfully Blind To, The Asserted Patents........................................................................... 10

      2.    VLSI Fails To Sufficiently Plead That Intel Knew Of, Or Was Willfully Blind To, Let Alone Intended, Infringement Of The Asserted Patents ............................. 13

   D.    VLSI Fails to Adequately Plead A Claim For Enhanced Damages Based On Willful Infringement ............................................................................................. 14

      1.    VLSI Fails To Sufficiently Plead That Intel Knew Of The Asserted Patents Before VLSI's Complaints ........................................................................ 16

      2.    VLSI Fails To Sufficiently Plead That Intel Knew Or Should Have Known That Its Conduct Amounted To Infringement Of The Asserted Patents......................... 17

IV.    CONCLUSION................................................................................................ 18

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
　876 F.3d 1350 (Fed. Cir. 2017).................................................................................17

*Affinity Labs of Texas, LLC v. Toyota Motor North America*,
　No. W:13–CV–365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) .........................12, 14

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)...........................................................................................1, 7, 8

*Atlas IP, LLC v. S. Co.*,
　No. 17-20273-CIV, 2017 WL 4993378 (S.D. Fla. June 28, 2017)....................................9

*Bell Atlantic Corp. v. Twombly*,
　550 U.S. 544 (2007)..............................................................................................1, 7

*Chapterhouse, LLC v. Shopify, Inc.*,
　No. 2:18-CV-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018) .....................8, 9

*Commil USA, LLC v. Cisco Sys., Inc.*,
　135 S. Ct. 1920 (2015)...........................................................................................13

*Global-Tech Appliances, Inc. v. SEB S.A.*,
　563 U.S. 754 (2011)...........................................................................................10, 16

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
　136 S. Ct. 1923 (2016).....................................................................................3, 11, 14

*Intel Corp. v. Future Link Sys., LLC*,
　268 F. Supp. 3d 605 (D. Del. 2017)..............................................................................11

*Laitram Corp. v. Rexnord, Inc.*,
　939 F.2d 1533 (Fed. Cir. 1991).......................................................................................8

*M&C Innovations, LLC v. Igloo Prod. Corp.*,
　No. 4:17-CV-2372, 2018 WL 4620713 (S.D. Tex. July 31, 2018) ............................14, 15

*Meetrix IP, LLC v. Cisco Sys., Inc.*,
　No. 1-18-CV-309-LY, 2018 WL 8261315 (W.D. Tex. Nov. 30, 2018).....................15, 18

*Nonend Inventions, N.V. v. Apple Inc.*,
　No. 2:15-cv-466-JRG-RSP, 2016 WL 1253740 (E.D. Tex. Mar. 11, 2016) .........11, 12, 16

*ReefEdge Networks, LLC v. Juniper Networks, Inc.*,
    29 F. Supp. 3d 455 (D. Del. 2014)....................................................................................13

*Stragent, LLC v. BMW of N. Am., LLC*,
    No. 6:16-CV-446-RWS-KNM, 2017 WL 2821697 (E.D. Tex. Mar. 3,
    2017) ...........................................................................................................................8, 9

*T-Rex Prop. AB v. Regal Entm't Grp.*,

    No. 6:16-CV-1029-RWS-KNM, 2017 WL 4229372 (E.D. Tex. Aug. 31,
    2017) ...................................................................................................................16

*WCM Indus., Inc. v. IPS Corp.*,
    721 F. App'x 959 (Fed. Cir. 2018) ...........................................................................17

*WesternGeco L.L.C v. Ion Geophysical Corp.*,
    837 F.3d 1358 (Fed. Cir. 2016)................................................................................17

## STATUTES, RULES, AND REGULATIONS

35 U.S.C. § 284...................................................................................................................14

Federal Rule of Civil Procedure 8(a)(2) ............................................................................1

Federal Rule of Civil Procedure 12(b)(6) ......................................................................1, 7

## I.      INTRODUCTION

Plaintiff VLSI Technology LLC ("VLSI") has now sued Defendant Intel Corporation ("Intel") eight times in the past 18 months, both in the United States and foreign jurisdictions.  In these latest domestic actions—which VLSI filed after voluntarily dismissing a complaint in Delaware on six of the same patents following receipt of a negative ruling from that court— VLSI alleges that thousands of Intel's microprocessors infringe, directly and indirectly, eight patents.  VLSI also alleges that Intel has willfully infringed every one of the patents, and that VLSI is accordingly entitled to enhanced damages for every one of the patents.

In the instant complaints, certain of VLSI's allegations—namely, its direct infringement allegations for one of the patents and its indirect infringement and enhanced damages claims for all eight patents—fall well short of the pleading requirements of Federal Rule of Civil Procedure 8(a)(2), *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  Indeed, another federal judge has already dismissed VLSI's substantively similar indirect infringement and enhanced damages claims in a co-pending litigation against Intel.

Three fundamental deficiencies in the complaints require dismissal under Rule 12(b)(6). ***First***, VLSI fails to sufficiently plead a claim for direct infringement of one of the asserted patents, the '373 patent, because it fails to plausibly allege that Intel (or anyone else) practices each and every limitation of at least one claim of the patent.  The single asserted claim of the '373 patent requires a "first" voltage to be provided to a memory under certain conditions and a "second" voltage to be provided to the memory under other conditions.  But VLSI's own complaint concedes that the memory in Intel's accused products is "always" provided with the "second" voltage—not just under certain conditions.  With this concession that the voltage is "always" provided, VLSI's complaint cannot support a claim for infringement—the complaint

itself contradicts infringement.  In addition, VLSI alleges no facts suggesting that Intel or its customers perform a particular testing step required by the '373 patent.  For these reasons, VLSI has failed to plausibly plead that Intel (or anyone else) infringes the '373 patent, and all claims relating to this patent should be dismissed.

**Second**, VLSI fails to sufficiently plead claims for indirect infringement of any of the eight asserted patents because it fails to plausibly allege that Intel knew of or was willfully blind to the patents before VLSI first asserted them.  To state a valid claim for indirect infringement under either an induced or contributory infringement theory, a patentee must allege facts plausibly showing, among other things, that the accused infringer (1) knew of (or was willfully blind to) the asserted patent, and (2) knew that the conduct accused of inducing or contributing to infringement caused a third party to directly infringe the patent.  But VLSI makes **no allegations** that Intel actually knew of the patents prior to VLSI asserting six of them in Delaware on March 1, 2019, before voluntarily dismissing and re-asserting them in this District along with two new patents on April 11, 2019.

Trying to overcome Intel's lack of knowledge of the patents, VLSI pleads that, even if Intel did not know of the patents before the suits, Intel was willfully blind to each of the eight patents for some combination of four reasons:  (1) Intel has a supposed corporate policy of ignoring third-party patents; (2) VLSI has previously sued Intel on patents acquired from the same third-party; (3) VLSI has previously sued Intel on patents that name some of the same inventors named on the patents asserted in this District; and (4) three inventors of the asserted patents currently work at Intel.  But as explained herein, these allegations are insufficient as a matter of law to give rise to a "willful blindness" theory.

In addition to its failure to plead actual knowledge or a legally tenable willful blindness theory, VLSI also does not plead any facts that could plausibly demonstrate that Intel knew that its conduct had purportedly resulted in direct infringement by one or more third parties.  This is another independent basis for dismissal of the indirect infringement claims.  Accordingly, these claims should be dismissed—at a minimum, for the pre-complaint-filing period (*i.e.*, before March 1, 2019 for the six patents first asserted in Delaware and before April 11, 2019 for the two patents first asserted in this District).

***Third***, VLSI fails to sufficiently plead claims for enhanced damages based on willful infringement of any of the eight patents.  VLSI pleads ***no facts*** to support the required finding that, if it has infringed, Intel's conduct has been "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016).  Indeed, VLSI has alleged nothing more than a "garden variety" patent case in which a patentee provides notice of a patent and its infringement via a complaint and the accused infringer continues its conduct thereafter. Accordingly, these claims should be dismissed in their entirety—or, at a minimum, for the pre-complaint-filing period (*i.e.*, before March 1, 2019 for the six patents first asserted in Delaware and before April 11, 2019 for the two patents first asserted in this District).

In sum, all of VLSI's infringement claims relating to the '373 patent, its indirect infringement claims relating to all eight patents, and its enhanced damages claims based on willful infringement should be dismissed.

## II.     STATEMENT OF FACTS

### A.     Background

These cases are continuations of a preexisting dispute in Delaware involving the same parties and six of the same patents.  On June 28, 2018, VLSI sued Intel for infringement of five

patents in the District of Delaware.  No. 1:18-cv-00966-CFC, D.I. 1 ("*Delaware I* action").  On

March 1, 2018, VLSI again sued Intel in the District of Delaware, asserting six additional patents

(No. 1:19-cv-00426-CFC, D.I. 1 ("*Delaware II* action")), before voluntarily dismissing the case

six weeks later, after having certain enhanced damages claims and pre-suit indirect infringement

claims dismissed in the *Delaware I* action (No.19-cv-00426, D.I. 110).  In its three complaints in

this District, VLSI has now re-asserted the same six patents VLSI asserted in the *Delaware II*

action, along with two new patents.

The eight patents that VLSI asserts are as follows:  U.S. Patent Nos. 6,366,522 ("the '522

patent"), 6,633,187 ("the '187 patent"), 7,292,485 ("the '485 patent"), 7,725,759 ("the '759

patent"), 7,606,983 ("the '983 patent"), 7,793,025 ("the '025 patent"), 7,523,373 ("the'373

patent"), and 8,156,357 ("the '357 patent") (collectively, the "asserted patents").  *See* No. 6:19-

cv-00254, D.I. 1 ("-254 Compl."); No. 6:19-cv-00255, D.I. 1 ("-255 Compl."); No. 6:19-cv-

00256, D.I. 1 ("-256 Compl.").  VLSI asserted all these patents except the '373 and '357 patents

in the *Delaware II* action.

### B.     VLSI's Legally Deficient Claim For Direct Infringement Of The '373 Patent

The '373 patent relates to the electric voltage provided to memory in a computer

processor.  '373 patent at Abstract.  The patent describes testing the memory to determine its

"minimum operating voltage."  *Id.* at 2:29-34.  Then, *either* a "first" voltage *or* a "second"

voltage is provided to the memory.  '373 patent at 2:52-57.  The "first" voltage is provided to the

memory when the first voltage is above the "minimum operating voltage" of the memory.  *Id.* at

3:30-35.  But when the first voltage drops below the "minimum operating voltage" of the

memory, a "second" voltage is provided to the memory.  *Id.* at 3:35-39.  The patent does not

describe or claim any scenario in which one voltage is always provided to the memory.  *See id.*

VLSI alleges that certain of Intel's Ivy Bridge computer processors infringe the '373 patent.  -254 Complaint at ¶¶ 43-44.  The only claim VLSI asserts is claim 16—a method claim that requires providing **both** a "first regulated voltage" **and** a "second regulated voltage" to the memory.  Specifically, claim 16 requires "***providing the first regulated voltage as the operating voltage of the memory*** when the first regulated voltage is at least the value of the minimum operating voltage;" and "***providing the second regulated voltage as the operating voltage of the memory*** when the first regulated voltage is less than the value of the minimum operating voltage . . . ."  '373 patent at claim 16 (emphases added).

VLSI's infringement allegations not only fail to show how any accused products meet these claim requirements, they directly contradict the claim requirements.  -254 Complaint at ¶¶ 55-59.  VLSI alleges that the accused "memory array is ***always*** provided with . . . the ***second*** voltage."  *Id.* at ¶ 56 (emphasis added).  In other words, VLSI admits that, contrary to the claim requirements, the memory is ***not*** provided with the first regulated voltage; rather it is "***always*** provided with" the "second."  This concession is fatal to its infringement case.

In addition, the method of claim 16 requires "testing the memory to determine . . . a minimum operating voltage."  But the complaint is devoid of any factual allegation that Intel (or anyone else) ever performs this necessary "testing" step—with the complaint simply reciting the claim language about testing.  *Id.* at ¶ 46 ("Intel Ivy Bridge processors operate using a method comprising providing an integrated circuit with a memory that uses an operating voltage, ***testing the memory to determine the operating voltage of the memory that is a minimum operating voltage***, storing, in a non-volatile manner, the value of the minimum operating voltage." (emphasis added)).  Nor does VLSI close this gap in its allegations of indirect infringement.  Instead, VLSI alleges that Intel indirectly infringes the '373 patent by "controlling the design and

manufacture of, offering for sale, selling, supplying, and otherwise providing instruction and guidance regarding the above-described products with the knowledge and specific intent to encourage and facilitate infringing uses of such products by its customers both inside and outside the United States." *Id.* ¶ 61.  There are no specific facts regarding anyone doing the required "testing" anywhere in the complaint.

### C.   VLSI's Legally Deficient Indirect Infringement Claims

In its complaints, VLSI alleges that Intel has indirectly infringed the asserted patents based on claims of induced infringement and contributory infringement.  -254 Complaint at ¶¶ 29, 30, 61, 62, 91, 92; -255 Complaint at ¶¶ 34, 35, 68, 69; -256 Complaint at ¶¶ 41, 42, 72, 73, 110, 111.  Although these claims require VLSI to plead facts sufficient to establish a plausible basis to conclude that Intel had knowledge of the asserted patents, VLSI does not plead any facts alleging that Intel had actual knowledge of each patent before VLSI first asserted it against Intel. *See* -254 Complaint at ¶¶ 28, 60, 90; -255 Complaint at ¶¶ 33, 67; -256 Complaint at ¶¶ 40, 71, 109 (alleging knowledge of the '357 and '373 patents "at least since" the filing of the -254 Complaint and knowledge of the six *Delaware II* patents "at least since" the filing of the *Delaware II* action on March 1, 2019).  Rather, VLSI's complaint seeks to impute pre-suit knowledge of the eight asserted patents to Intel because it purportedly "willfully blind[ed]" itself to these patents in some combination of four different reasons.  *See id.*  But as explained below, none of the facts alleged by VLSI is legally sufficient to give rise to a plausible inference that Intel knew or should have known of any of the asserted patents before VLSI filed suit.

VLSI's claims of induced and contributory infringement also require proof that, for each asserted patent, Intel knew that its conduct accused of inducing or contributing to infringement led a third party to directly infringe the patent.  On that issue, however, VLSI's complaints do not include ***any*** factual allegations at all (beyond conclusory legal assertions) that Intel knew of

any alleged third-party infringement before VLSI first asserted each patent against Intel.  *See* -254 Complaint at ¶¶ 29, 30, 61, 62, 91, 92; -255 Complaint at ¶¶ 34, 35, 68, 69; -256 Complaint at ¶¶ 41, 42, 72, 73, 110, 111.

### D. VLSI's Legally Deficient Enhanced Damages and Willful Infringement Allegations

VLSI's complaints also allege that Intel has willfully infringed each of the eight asserted patents and seek enhanced damages.  -254 Complaint at ¶¶ 34, 66, 96, Prayer for Relief; -255 Complaint at ¶¶ 39, 73, Prayer for Relief; -256 Complaint at ¶¶ 46, 77, 115, Prayer for Relief. But VLSI does not plead ***any*** facts to support its conclusory allegations regarding Intel's conduct.  Instead, VLSI resorts to adjectives and adverbs without any supporting factual allegations, pleading that "Intel has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for VLSI's patent rights," and that "Intel's infringing actions have been and continue to be consciously wrongful."  *Id.*  The complaints do not include any facts that would substantiate these accusations.  In addition, VLSI pleads no facts to support a plausible inference that Intel knew or should have known before VLSI's assertion of the patents that Intel was purportedly infringing them.

### III. ARGUMENT

### A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 662.  A complaint must establish

more than a "sheer possibility" that the claims are true, and the Court need not accept as true

legal conclusions couched as factual allegations.  *Id.* at 678.

**B.      VLSI's Claims Concerning The '373 Patent Should Be Dismissed**

The failure of an accused product to meet a single claim limitation negates infringement

of that claim.  *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).  To survive

a motion to dismiss, therefore, a plaintiff must plausibly plead facts showing that a defendant's

products meet each and every limitation of at least one patent claim.  *See, e.g. Chapterhouse,*

*LLC v. Shopify, Inc.*, No. 2:18-CV-00300-JRG, 2018 WL 6981828, at *2 (E.D. Tex. Dec. 11,

2018) (dismissing a complaint where the plaintiff failed to provide factual allegations to support

its conclusory statements that the products met the claim limitations).  Conclusory statements are

not sufficient.  *See Chapterhouse*, 2018 WL 6981828, at *2 (holding that conclusory statements

without accompanying factual allegations are insufficient to pass the *Iqbal*/*Twombly* standard);

*Stragent, LLC v. BMW of N. Am., LLC*, No. 6:16-CV-446-RWS-KNM, 2017 WL 2821697, at *6

(E.D. Tex. Mar. 3, 2017), *report and recommendation adopted,* 2017 WL 2832613 (E.D. Tex.

Mar. 27, 2017) (finding that plaintiff failed to plausibly plead direct infringement because it did

not "adduce evidence showing the elements" of the patent claims were met).

VLSI fails to plausibly plead that Intel (or anyone else) directly infringes claim 16 of the

'373 patent, which is the only claim asserted in the -254 Complaint.

***First***, VLSI's allegations ***contradict*** the requirements of the asserted claim, which

necessarily forecloses infringement.  The method of claim 16 requires providing two voltages to

the memory:  (1) a "first" regulated voltage under certain conditions; and (2) a "second"

regulated voltage under other conditions.  *See* '373 patent at claim 16.  Contrary to these claim

requirements, VLSI alleges that "the voltage provided to the [accused memory] is 'ungated,'

meaning that the memory array ***is always*** provided with VCC, ***the second voltage***."  -254

Complaint at ¶ 56 (emphases added).  Thus, according to VLSI's own allegations, the "second" voltage is "always" provided to the memory.  But, if VLSI's own assertion is accepted as true, if the "second" voltage is always provided to the memory, the "first" voltage **is not** provided to the memory.  VLSI's allegations therefore contradict the requirements of claim 16, and VLSI has failed to plausibly allege that Intel "provides a first regulated voltage" as required by the claim. *See Atlas IP, LLC v. S. Co.*, No. 17-20273-CIV, 2017 WL 4993378, at *8 (S.D. Fla. June 28, 2017) (dismissing complaint where plaintiffs' own allegations contradicted a claim limitation because "[a]s Plaintiff has described the Accused Products, they are either dysfunctional or incapable of practicing the [claim limitation]").  Accordingly, VLSI's infringement allegations regarding the '373 patent can and should be dismissed on this basis alone.

*Second*, VLSI does not plead any facts that Intel or its customers perform the "testing" step required by claim 16.  Complaint at ¶ 46.  Instead, VLSI simply mimics the language of claim 16 without providing any factual support.  *Id.*  The complaint's conclusory statement that Intel's processors "test[] the memory to determine the operating voltage of the memory that is a minimum operating voltage" lacks any accompanying factual support and thus is insufficient under the *Iqbal/Twombly* standard.  *Chapterhouse*, 2018 WL 6981828, at *2; *Stragent*, 2017 WL 2821697, at *6 (holding that the complaint failed to plausibly plead direct infringement because it did not "adduce evidence showing the elements" of the patent claims were met).

For these reasons, VLSI fails to plausibly plead that Intel or its customers infringe claim 16 of the '373 patent.  Thus, **all** infringement allegations—direct, indirect, willful—should be dismissed as to the '373 patent.

### C.      VLSI's Claims For Indirect Infringement Should Be Dismissed

#### 1.      VLSI Fails To Sufficiently Plead That Intel Knew Of, Or Was Willfully Blind To, The Asserted Patents

VLSI's complaints fail to plead sufficient facts regarding knowledge of, or willful blindness to, the asserted patents.  VLSI's complaints include ***no factual allegations*** that Intel knew of the '357 and '373 patents before the filing of the -254 Complaint, or the other six patents before the filing of the *Delaware II* action.  Rather, VLSI alleges that Intel was willfully blind to the existence of all eight asserted patents.  But "a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts."  *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011).  As explained below, the facts VLSI alleges, even taken as true, do not make it plausible that Intel was aware of a high likelihood of a particular asserted patent and took deliberate steps to avoid learning of it.

Notably, another court earlier rejected similar theories advanced by VLSI against Intel. In the *Delaware I* action, VLSI alleged that Intel "was willfully blind to the existence of [another VLSI patent] based on, for example, its publicly-known corporate policy forbidding its employees from reading patents held by outside companies or individuals."  No. 1:18-cv-00966, D.I. 001 at ¶¶ 31, 54,  84, 113, 142.  Citing *Global-Tech*, 563 U.S. 754 at 769, Judge Connolly found this allegation to be deficient because "there is no allegation in the complaint from which it could be plausibly inferred that Intel subjectively believed that there was a high probability that the [] patent existed; and thus there is no basis from which to conclude that Intel was willfully blind to the [] patent's existence."  *Id.*, D.I. 110 at 4.

VLSI's instant complaints have similar failings.  ***First***, VLSI asserts that Intel's supposed "corporate policy forbidding its employees from reading patents held by outside companies or

individuals" is evidence of willful blindness.  -254 Complaint at ¶¶ 28, 60, 90; -255 Complaint at

¶¶ 33, 67; -256 Complaint at ¶¶ 40, 71, 109.  In support of its allegation, VLSI points to the

denial of Intel's motion for summary judgment of no willful infringement in an unrelated case—

*Intel Corp. v. Future Link Sys., LLC*, 268 F. Supp. 3d 605, 623 (D. Del. 2017).  But VLSI only

refers to the *Future Link* court's summary of ***the plaintiff's argument***:  "the court noted the

***patent owner's observation*** that 'Intel's own engineers concede that they avoid reviewing other,

non-Intel patents so as to avoid willfully infringing them.'"  -254 Complaint at ¶¶ 28, 60, 90; -

255 Complaint at ¶¶ 33, 67; -256 Complaint at ¶¶ 40, 71, 109 (emphasis added).

The court did not hold that such a policy would amount to willful blindness—in fact, it

suggested the opposite, concluding that it was "difficult to see how a reasonable factfinder would

view the panoply of conduct alleged by Future Link (if proven) to be egregious[,] wanton, bad-

faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."  268 F.

Supp. 3d at 623 (citing *Halo*, 136 S. Ct. 1923 at 1932).  If anything, that decision supports

dismissal, as VLSI's complaint fails to plead how Intel's supposed policy—which, as pled, is

directed to ***all*** patents held by ***all*** third-party companies—had anything to do with "deliberate

action" taken by Intel to avoid actual knowledge of the eight specific patents VLSI asserts in this

litigation.

Indeed, the law is clear that broad allegations of ill-defined policies to ignore patents is

not enough to successfully plead willful blindness.  *See Nonend Inventions, N.V. v. Apple Inc.*,

No. 2:15-cv-466-JRG-RSP, 2016 WL 1253740, at *2-3 (E.D. Tex. Mar. 11, 2016), *report and

recommendation adopted*, 2016 WL 1244973 (E.D. Tex. Mar. 30, 2016) ("[T]he Court finds

Motorola's policy of asking its employees to ignore patents and patent applications does not per-

se constitute 'willful blindness.' The Court finds that more must be alleged to show a policy of

ignoring patents caused an alleged infringer's actions to 'surpass recklessness and negligence' and rise to the level of 'willful blindness.'"). Thus, it is unsurprising that, in the *Delaware I* action, Judge Connolly rejected VLSI's reliance on this same argument in granting Intel's motion to dismiss. *See Delaware I* action, D.I. 27 at 2; *id.*, D.I. 110 at 5.

**Second**, VLSI asserts that Intel had notice of each of the eight asserted patents because VLSI has already sued Intel for infringing other patents that VLSI obtained from the same source as the asserted patents—NXP. -254 Complaint at ¶¶ 28, 60, 90; -255 Complaint at ¶¶ 33, 67; -256 Complaint at ¶¶ 40, 71, 109. In essence, VLSI argues that a company has notice of *every* patent belonging to *every* former owner of any patent the company is ever accused of infringing. This defies both controlling law and common sense. Given that even "the defendant's awareness of a plaintiff's patent portfolio is not enough to support a willful blindness claim to defeat a motion to dismiss," *Affinity Labs of Texas, LLC v. Toyota Motor North America*, No. W:13–CV–365, 2014 WL 2892285, at *6 (W.D. Tex. May 12, 2014), Intel's awareness of **non-party** NXP's former patent portfolio is by definition insufficient to demonstrate that Intel was willfully blind to the asserted patents.

**Third**, VLSI asserts that knowledge of the '373, '357, '522, and '187 patents should be imputed to Intel because these patents share common inventors with different patents that VLSI previously asserted against Intel in different cases. -254 Compl. at ¶¶ 28, 60; -255 Compl. at ¶¶ 33, 67. But once again, that assertion rests on the untenable argument that Intel (and any other company) should have knowledge of *every* patent filed by *every* inventor of *every* patent ever asserted against it in *every* action. That is not the law—nor should it be. *See Affinity Labs*, 2014 WL 2892285, at *6 (granting motion to dismiss and rejecting plaintiff's argument that defendant was willfully blind because plaintiff had previously sued defendant on similar patents).

- 12 -

**Fourth**, VLSI asserts that knowledge of three of the asserted patents should be imputed to Intel because each patent lists as an inventor someone who now works at Intel.  -256 Complaint at ¶¶ 40, 71, 109.  But VLSI provides no facts whatsoever to support its allegation that Intel either knows of or takes deliberate steps to avoid learning of every patent on which any of the thousands of engineers it employs is named as an inventor.  Individual employees' knowledge of their own patents does not equate to Intel's knowledge or willful blindness.  *See ReefEdge Networks, LLC v. Juniper Networks, Inc.*, 29 F. Supp. 3d 455, 458, 460 (D. Del. 2014) (accused infringer's deputy counsel and vice president's knowledge of asserted patents from previous employment could not be imputed to accused infringer absent additional factual allegations).  VLSI's complaints are devoid of any factual allegations beyond these named inventors being employed at Intel.  Accordingly, VLSI's attempt to impute knowledge of these patents to Intel fails.

Having failed to adequately allege that Intel knew of, or was willfully blind to, the asserted patents before VLSI first asserted them, VLSI has failed to plead indirect infringement.

> **2.**    **VLSI Fails To Sufficiently Plead That Intel Knew Of, Or Was Willfully Blind To, Let Alone Intended, Infringement Of The Asserted Patents**

VLSI's indirect infringement claims should also be dismissed because VLSI's complaints are devoid of factual allegations that, even if accepted as true, would give rise to a plausible inference that Intel knew, or was willfully blind to the fact, that the acts at issue constituted patent infringement.  "Like induced infringement, contributory infringement requires knowledge of the patent in suit and ***knowledge of patent infringement***."  *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) (emphasis added).  Similar to its *Delaware I* complaint, VLSI's complaints merely state, in conclusory fashion, that Intel "actively, ***knowingly***, and

intentionally has induced infringement" of the asserted patents, that Intel acted "with the **_knowledge_** and **_specific intent_** to encourage and facilitate infringing uses of" products described in the complaints, and that Intel "**_knows_** [the accused products] constitute a material part of the inventions of the [asserted patents] and are not staple articles or commodities of commerce suitable for substantial noninfringing use." -254 Compl. at ¶¶ 29, 30, 61, 62, 91, 92; -255 Compl. at ¶¶ 34, 35, 68, 69; -256 Compl. at ¶¶ 41, 42, 72, 73, 110, 111.  VLSI presents no facts to support these allegations.  *Affinity Labs*, 2014 WL 2892285, *3.  Because VLSI has not done that, its claims for indirect infringement fail and should be dismissed—at a minimum, for the pre-complaint-filing period (*i.e.*, before March 1, 2019 for the six patents first asserted in Delaware and before April 11, 2019 for the two patents first asserted in this District).

### D.   VLSI Fails to Adequately Plead A Claim For Enhanced Damages Based On Willful Infringement

Under 35 U.S.C. § 284, courts "may increase the damages [awarded in a patent infringement case] up to three times the amount found or assessed."  The Supreme Court has explained that enhanced damages under § 284 "are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior," *i.e.*, conduct that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."  *Halo*, 136 S. Ct. at 1932.

In considering motions to dismiss enhanced damages based on willful infringement post-*Halo*, some courts in the Fifth Circuit have concluded that merely pleading that a defendant gained knowledge of a patent and alleged infringement based on the filing of a complaint, and continued its conduct thereafter, is insufficient to state a claim.  *See M&C Innovations, LLC v. Igloo Prod. Corp.*, No. 4:17-CV-2372, 2018 WL 4620713 (S.D. Tex. July 31, 2018).  In *M&C*

*Innovations*, the court dismissed a claim for enhanced damages based on willful infringement, finding that:

> Assuming for the sake of argument that the complaint put Igloo on notice of the existing patents, and Igloo continued manufacturing its infringing products, this would simply be the kind of 'garden-variety' patent case that *Halo* affirms is ill-suited for a finding of willfulness.  Moreover, this post-suit fact pattern characterizes every infringement action except for those in which an alleged infringer immediately ceases production following service of the complaint.  MCI has offered no allegations suggesting that Igloo deliberately re-dedicated itself to infringing after being served with the complaint.

*Id.* at *5 (citation omitted).  *See also Meetrix IP, LLC v. Cisco Sys., Inc.*, No. 1-18-CV-309-LY, 2018 WL 8261315, at *3 (W.D. Tex. Nov. 30, 2018) (dismissing willful infringement claim and agreeing that "the complaint does not allege any facts raising a plausible inference of the egregious behavior required under *Halo*").

Here, VLSI has failed to allege facts plausibly showing anything more than the "garden variety" patent case described in *M&C Innovations*, in which Intel has learned of VLSI's patents and its alleged infringement by virtue of VLSI filing suit and Intel has not immediately ceased production of its accused products.  Accordingly, VLSI has failed to make out a claim for enhanced damages based on willful infringement, and its claims should be dismissed in their entirety.  Even if less stringent pleading requirements were found to be sufficient to make out a claim for enhanced damages based on willful infringement, because VLSI fails to plead facts plausibly showing that Intel had knowledge of the asserted patents or its alleged infringement thereof before VLSI first asserted the patents, VLSI's enhanced damages claim based on its willful infringement allegations should be dismissed as a matter of law for pre-assertion activity (*i.e.*, before the filing of the -254 Complaint for the '357 and '373 patents and before the filing of the *Delaware II* action for the six patents first asserted in that action).

- 15 -

      **1.**      **VLSI Fails To Sufficiently Plead That Intel Knew Of The Asserted Patents Before VLSI's Complaints**

As discussed above, VLSI's -254 Complaint includes no factual allegations to support an inference that Intel knew of the '373 or '357 patent before VLSI filed the -254 Complaint. Likewise, VLSI fails to sufficiently plead in the -255 and -256 actions that Intel knew of the other six asserted patents before VLSI filed the *Delaware II* action.

VLSI's allegations of willful blindness are similarly deficient. As a threshold matter, no Supreme Court or Federal Circuit decision has *ever* found that a willful blindness theory (which the Supreme Court's *Global-Tech* decision applied solely in the context of an indirect infringement claim) can satisfy the knowledge-of-the-asserted-patent prong of willful infringement and therefore merit enhanced damages. *Global-Tech*, 563 U.S. 754, 766, 769. *See also T-Rex Prop. AB v. Regal Entm't Grp.*, No. 6:16-CV-1029-RWS-KNM, 2017 WL 4229372, at *10 (E.D. Tex. Aug. 31, 2017), *report and recommendation adopted sub nom.*, 2017 WL 4225441 (E.D. Tex. Sept. 22, 2017) ("[I]t is not clear whether the doctrine of 'willful blindness' extends to willful infringement. It is similarly unclear whether a plaintiff may plead allegations of 'constructive knowledge' to support a claim for willful infringement."); *Nonend Inventions,* 2016 WL 1253740, at *2-3 (noting absence of authority supporting application of willful blindness doctrine in direct infringement context).

But even if willful blindness could, in theory, satisfy the actual knowledge requirement in the context of a willful infringement and enhanced damages analysis, VLSI's allegations still would be insufficient to satisfy such a theory. VLSI's allegations that Intel was willfully blind (because a supposed Intel policy prohibits Intel employees from reviewing non-Intel patents (which was insufficient in the *Delaware I* action), because VLSI has previously sued Intel on patents with overlapping inventors, because VLSI has previously sued Intel on other patents that

were formerly owned by NXP, and because three named inventors of the asserted patents work at Intel) are insufficient to permit a plausible inference that Intel believed there was a "high probability" of the existence of any asserted patent and/or took "deliberate" steps to avoid learning of it.  *See* Section III.C.1, *supra*.

>    2.    **VLSI Fails To Sufficiently Plead That Intel Knew Or Should Have Known That Its Conduct Amounted To Infringement Of The Asserted Patents**

VLSI's enhanced damages claims also should be dismissed because the complaints are entirely devoid of ***any*** factual allegations that, even if taken as true, demonstrate that Intel knew or should have known that its conduct amounted to infringement of the patents before VLSI asserted them.  Specifically, to plead a valid claim for enhanced damages based on willful infringement, a plaintiff must include factual allegations that the defendant "acted despite a risk of infringement that was either known or so obvious that it should have been known."  *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017); *WesternGeco L.L.C v. Ion Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016), *rev'd on other grounds*, 138 S. Ct. 2129 (2018); *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 970 (Fed. Cir. 2018)).

In the *Delaware I* action, Judge Connolly recently held that VLSI's allegation that Intel was willfully blind to the existence of the patents themselves did not amount to an allegation that "Intel has been willfully blind to its *infringement* of those patents."  No. 18-966-CFC, D.I. 110 at 5 (emphasis in original).  The same result applies here because—although VLSI's complaints contain the conclusory allegation that "Intel was willfully blind to the existence of [the patent] ***and its infringement*** of [the patent]" (-254 Complaint at ¶¶ 28, 60, 90, -255 Complaint at ¶¶ 33, 67, *and* -256 Complaint at ¶¶ 40, 71, 109 (emphasis added))—those conclusory statements fail to allege ***any*** facts from which one could plausibly infer that Intel knew or should have known of

an obvious risk of infringement of the asserted patents before VLSI filed suit.  Accordingly, the

claim for enhanced damages based on willful infringement should be dismissed for this reason as

well.  *See Meetrix IP*, 2018 WL 8261315, at *3 ("Meetrix's '[t]hreadbare recital[ ] of the

elements of [willful infringement], supported by mere conclusory statements, do[es] not

suffice.'") (citing *Iqbal*).

### IV.        CONCLUSION

Based on the foregoing, Intel respectfully requests that the Court dismiss: (1) direct

infringement, and thus all claims, relating to the '373 patent; (2) indirect infringement claims—at

a minimum, for pre-assertion activity (*i.e.*, before April 11, 2019 for the '357 and '373 patents

and before March 1, 2019 for the '025, '983, '485, '187, '522, and '759 patents); and

(3) enhanced damages claims based on willful infringement—at a minimum, for pre-assertion

activity (*i.e.*, before April 11, 2019 for the '357 and '373 patents and before March 1, 2019 for

the '025, '983, '485, '187, '522, and '759 patents).


Dated: June 3, 2019                              Respectfully submitted,

                                                 */s/ J. Stephen Ravel*
                                                 J. Stephen Ravel
William F. Lee (*Pro Hac Vice*)                  Texas State Bar No. 16584975
Louis W. Tompros (*Pro Hac Vice*)                KELLY HART & HALLMAN LLP
Kate Saxton (*Pro Hac Vice*)                     303 Colorado, Suite 2000
WILMER CUTLER PICKERING HALE                     Austin, Texas 78701
  & DORR LLP                                      Tel: (512) 495-6429
60 State Street                                  Email: steve.ravel@kellyhart.com
Boston, Massachusetts 02109
Tel: (617) 526-6000
Email: william.lee@wilmerhale.com                James E. Wren
Email: louis.tompros@wilmerhale.com              Texas State Bar No. 22018200
Email: kate.saxton@wilmerhale.com                1 Bear Place, Unit 97288
                                                 Waco, Texas 76798
                                                 Tel: (254) 710-7670
Gregory H. Lantier (*Pro Hac Vice*)              Email: james.wren@baylor.edu
Amanda L. Major (*Pro Hac Vice*)
WILMER CUTLER PICKERING HALE

& Dorr LLP
1875 Pennsylvania Avenue
Washington DC 20006
Tel: (202) 663-6000
Email: gregory.lantier@wilmerhale.com
Email: amanda.major@wilmerhale.com

Alexis Pfeiffer (*Pro Hac Vice*)
Wilmer Cutler Pickering Hale
  & Dorr LLP
950 Page Mill Road
Palo Alto, California 94304
Tel: (650) 858-6052
Email: alexis.pfeiffer@wilmerhale.com

Sven Stricker
Texas State Bar No. 24110418
Kelly Hart & Hallman LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6464
Email: sven.stricker@kellyhart.com

*Attorneys for Intel Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system per Local Civil Rule CV-5(a)(3) on June 3, 2019.

*/s/ J. Stephen Ravel*
J. Stephen Ravel
Texas State Bar No. 16584975
Kelly Hart & Hallman LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
Email: steve.ravel@kellyhart.com