IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| VLSI TECHNOLOGY LLC,<br><br>             Plaintiff,<br><br>     v.<br><br>INTEL CORPORATION,<br><br>             Defendant. | C.A. No. 6:19-cv-00254-ADA |

**DEFENDANT INTEL CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS**
**<u>MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)</u>**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...............................................................................................................1

II. ARGUMENT.......................................................................................................................1

    A. VLSI's Forum-Shopping Alone Warrants Transfer Here.........................................1

    B. The Public and Private Interest Factors Do Not Compel a Different Result ...........4

        1. VLSI Mischaracterizes the Appropriate Legal Standard ..............................4

        2. VLSI Improperly Discounts the Efficiency Considerations Related to the Co-Pending Delaware I Action .....................................................................6

        3. VLSI's Analysis of the Private and Public Interest Factors Is Flawed........7

III. CONCLUSION..................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Affinity Labs of Texas, LLC v. Blackberry Ltd.*,
   2014 WL 10748106 (W.D. Tex. June 11, 2014) .......................................................................8

*AGIS Software Development LLC v. Huawei Device USA Inc.*,
   2018 WL 2329752 (E.D. Tex. May 23, 2018)...........................................................................9

*Bandspeed, Inc. v. Acer, Inc.*,
   2011 WL 3648453 (E.D. Tex. Aug. 15, 2011) .........................................................................5

*Calamp Wireless Networks Corp. v. Orbcomm, Inc.*,
   2016 WL 9150694 (E.D. Va. Nov. 10 2016).............................................................................6

*DataQuill, Ltd. v. Apple Inc.*,
   2014 WL 2722201 (W.D. Tex. June 13, 2014) .......................................................................10

*DataTreasury Corp. v. First Data Corp.*,
   243 F. Supp. 2d 591 (N.D. Tex. Feb 7, 2003) ..................................................................3, 4, 6

*Doubletree Partners, L.P. v. Land America American Title Co.*,
   2008 WL 5119599 (N.D. Tex. Dec. 3, 2008) ...........................................................................5

*Freehold Licensing, Inc. v. Aequitatem Capital Partners, LLC*,
   2018 WL 5539929 (W.D. Tex. Oct. 29, 2018) .........................................................................5

*Front Row Technologies, LLC v. MLB Advanced Media, L.P.*,
   2012 WL 12044383 (N.D. Tex. Dec. 17, 2012) ....................................................................7, 8

*General Electric Co. v. Westinghouse Electric Corp.*,
   297 F. Supp. 84 (D. Mass. 1969) ..........................................................................................4, 6

*Idenix Pharmaceuticals, Inc. v. Gilead Sciences, Inc.*,
   2014 WL 12782106 (D. Mass. June 30, 2014) .........................................................................7

*LegalForce, Inc. v. Legalzoom, Inc.*,
   2018 WL 6179319 (C.D. Cal. Nov. 27, 2018)..........................................................................3

*In re Microsoft Corp.*,
   630 F.3d 1361 (Fed. Cir. 2011)................................................................................................3

*Par Pharmaceutical, Inc. v. Breckenridge Pharmaceutical, Inc.*,
   2015 WL 5301640 (D. Del. Sept. 10, 2015) ............................................................................3

*PPS Data, LLC v. Diebold, Inc.*,
    2012 WL 1884655 (D. Utah May 22, 2012)............................................................................4

*Quantum Catalytics, LLC v. VantagePoint Venture Partners*,
    2008 WL 5272483 (S.D. Tex. Dec. 16, 2008)........................................................................5

*Qurio Holdings, Inc. v. DIRECTV, LLC*,
    2015 WL 1943278 (N.D. Ill. Apr. 29, 2015) .........................................................................4

*Stagecoach Putters, LLC v. Taylor Made Golf Co.*,
    2015 WL 11622483 (W.D. Tex. Jan. 26, 2015) .....................................................................8

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008)..............................................................................................3

*Westberry v. GusTech Communications, LLC*,
    2018 WL 3548869 (N.D. Tex. July 24, 2018) ....................................................................5, 9

*Whistler Group, Inc. v. PNI Corp.*,
    2003 WL 22939214 (N.D. Tex. Dec. 5, 2003) ...................................................................5, 6

*XY, LLC v. Trans Ova Genetics, LLC*,
    2017 WL 5505340 (W.D. Tex. Apr. 5, 2017).........................................................................5

**Other Authorities**

Wright & Miller, 9 Fed. Prac. & Proc. Civ. § 2375.......................................................................4

**I.      INTRODUCTION**

This transfer motion turns on whether VLSI engaged in improper forum-shopping, and the briefing before the Court now confirms that this is precisely what happened.  VLSI chose to file a new case in Delaware asserting nearly all of the patents-at-issue here, only to dismiss that case and re-file in this District after it had lost one important ruling in Delaware, and appeared poised to lose another.  Indeed, in its opposition brief, VLSI admits that its decision to move its case from Delaware to Texas was motivated by a desire to change judges—based on a claim that it only recently learned of Your Honor's patent litigation experience.  But Your Honor had been seated nearly seven months before VLSI shifted forums.  The closest event to VLSI's forum shift was a hearing in Delaware that went badly for VLSI—eight days later, it dismissed the Delaware case and re-filed in Texas.  These extraordinary facts require transfer.

In an effort to avoid that result, VLSI asks the Court to adopt an incorrect legal standard and to focus on issues that typically apply to transfer motions in a normal context.  But this is far from a typical transfer motion.  This District is VLSI's second choice of forum and no weight should be given to this choice.  None of VLSI's arguments can excuse the improper forum-shopping that has occurred, or otherwise justify keeping these cases in this District.  Otherwise, VLSI would be rewarded for its gamesmanship, and other litigants would be encouraged to shop their cases from district to district each time an adverse decision is handed down, until a favorable jurisdiction is finally found.  That is precisely the type of venue abuse that § 1404(a) was designed to prevent.  Accordingly, Intel respectfully requests that the Court transfer these cases back to the forum that VLSI initially selected:  Delaware.

**II.     ARGUMENT**

      **A.      VLSI's Forum-Shopping Alone Warrants Transfer Here**

VLSI's forum-shopping is demonstrated by the procedural history of these cases:

- **June 28, 2018:** VLSI files the Delaware I Action (after having previously sued Intel in California).

- **September 4, 2018:** In response to Intel's motion to transfer the Delaware I Action to California, VLSI argues that Delaware is its preferred forum for the disputes.

- **September 18, 2018:** Your Honor is seated on the bench of this Court.

- **March 1, 2019:** VLSI agrees to stay the California Action based on ongoing IPR proceedings. The same day (and before the deadline to amend its complaint in the Delaware I Action), VLSI files a second action in Delaware, the Delaware II Action, and designates it as "related" to the Delaware I Action.

- **March 20, 2019:** Intel files a motion to consolidate the two Delaware cases.

- **March 26, 2019:** Judge Connolly grants Intel's motion to dismiss certain of VLSI's willful and indirect infringement claims in the Delaware I Action.

- **March 27, 2019:** Intel informs VLSI that, for the same reasons articulated in Judge Connolly's dismissal order, Intel intends to move to dismiss VLSI's nearly identical claims in the Delaware II Action unless VLSI voluntarily dismisses those claims.

- **March 30, 2019:** VLSI gives Intel an unsolicited two-week extension to answer.

- **April 3, 2019:** Judge Connolly presides over a conference in the Delaware I Action, indicating he would reject VLSI's efforts to maintain a sprawling and unmanageable case—resulting in VLSI being ordered to ultimately reduce the number of asserted claims by 70%—and inquires about Intel's pending motion to consolidate.

- **April 11, 2019:** VLSI voluntarily dismisses the Delaware II Action—and, the same day, files the Texas Actions.

This chronology contradicts VLSI's claim that its "learn[ing] of this Court's experience in patent infringement litigation" was a key factor in "prompt[ing]" VLSI to dismiss the Delaware II case and re-file in Texas. (Opp. at 3.) This Court's experience with patent litigation was known when Your Honor was seated in September 2018, yet VLSI chose to bring the Delaware II Action in Delaware nearly *six months later*, in March 2019. VLSI only chose to dismiss that matter after the April 2019 hearing before Judge Connolly, which resulted in an unfavorable case-narrowing ruling in Delaware I and which suggested the possibility that Judge

2

Connolly would consolidate that case with the Delaware II Action.[1]

The law is clear that such gamesmanship is reason enough to transfer these cases back to Delaware. *See In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (granting mandamus and directing transfer to "ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's attempt at manipulation"); *LegalForce, Inc. v. Legalzoom, Inc.*, 2018 WL 6179319, at *3-4 (C.D. Cal. Nov. 27, 2018) (considering plaintiff's similar tactics under § 1404(a) and as part of the court's "inherent power to prevent judge-shopping"); Mot. at 7-9. Indeed, VLSI cites no case that suggests otherwise.[2]

VLSI tries to justify its maneuvering by invoking a plaintiff's "privilege" to choose a forum that it considers most favorable, suggesting that creates a right to move from forum to forum. (Opp. at 5-6.) It does not—indeed, "Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). And, whatever weight VLSI's argument might have had if VLSI *originally* filed these cases in this District, the argument has no weight as applied to VLSI's ***second choice*** of forum. *DataTreasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 594 (N.D. Tex. Feb 7, 2003) (while "it is one thing to give weight to plaintiff's

---

[1] VLSI asserts that it suffered only a single adverse ruling in Delaware and that "[n]othing substantive happened in" the Delaware II Action. (Opp. at 3, 7, 8 n.4; Wen Decl. ¶ 9.) This is incorrect. Judge Connolly dismissed certain of VLSI's claims, indicated he would be reducing the scope of VLSI's case (which resulted in an order to ultimately reduce the number of asserted claims by 70%), and expressed interest in Intel's motion to consolidate the two Delaware cases. Further, contrary to VLSI's statement that the flaws leading to dismissal of portions of VLSI's claims in Delaware I "do not exist in the pleadings here," the same (and additional) infirmities ***do*** in fact exist here, as outlined in Intel's motions to dismiss. (254 Action, D.I. 40; 255 Action, D.I. 29; 256 Action, D.I. 38.)

[2] *Par Pharmaceutical, Inc. v. Breckenridge Pharmaceutical, Inc.*, 2015 WL 5301640 (D. Del. Sept. 10, 2015), cited by VLSI, is not to the contrary. There, the patentee sued on one patent in Maryland and thereafter sued on a different, continuation-in-part patent in Delaware. Unlike here, the patentee did not sue in one court, withdraw the case, then re-file in another district.

3

initial choice of forum," it is quite another to give weight to a plaintiff's "second choice"); *Gen. Elec. Co. v. Westinghouse Elec. Corp.*, 297 F. Supp. 84, 87 (D. Mass. 1969) ("It is not 'in the interest of justice' to permit a party[] … to gain the respect and preference for its second choice of forum that is usually accorded its first choice. … It would be inconsistent with the sound, expeditious administration of a fair judicial system to permit repetitious litigation over a trial site in the absence of meaningfully changed circumstances.").[3] Contrary to VLSI's suggestion otherwise, neither the venue laws nor the Federal Rules of Civil Procedure shield, let alone justify, VLSI's conduct.[4]

### B. The Public and Private Interest Factors Do Not Compel a Different Result

VLSI asks the Court to turn a blind eye to VLSI's forum-shopping and to focus instead on certain private and public interest factors. But those factors (which, even on their own terms, do not justify transfer) must be considered within the procedural context of these cases. Against that backdrop, the factors do not support VLSI's position—to the contrary, the proper legal analysis compels transfer back to Delaware.

#### 1. VLSI Mischaracterizes the Appropriate Legal Standard

VLSI repeatedly asserts that transfer is appropriate only when the transferee forum is "clearly more convenient" to the parties and witnesses, and that neutral private and public interest factors "cannot support Intel's burden." (Opp. at 4-6, 18.) VLSI suggests that the Court

---

[3] *See also PPS Data, LLC v. Diebold, Inc.*, 2012 WL 1884655, at *2 (D. Utah May 22, 2012) ("While [the first-to-file] rule generally protects a plaintiff's choice of forum, the court need not mandate a rigid application of the rule when a plaintiff uses it to protect a second choice of forum."); *Qurio Holdings, Inc. v. DIRECTV, LLC*, 2015 WL 1943278, at *3 (N.D. Ill. Apr. 29, 2015) (where patentee moved to transfer after having "a change of heart" and seeing "greener pastures" elsewhere, finding the "specter of forum-shopping" weighs against deference to patentee's "second choice of forum").

[4] *Cf.* Wright & Miller, 9 Fed. Prac. & Proc. Civ. § 2375 ("[T]he purpose of imposing costs on a plaintiff who previously has dismissed an action against the same defendant, based on the same claim, is to deter forum shopping and vexatious litigation." (citing Fed. R. Civ. P. 41(c))).

does not have the power to consider VLSI's forum-shopping in determining whether to grant Intel's motion to transfer. But VLSI's rigid and narrow view of the law is incorrect.

The "clearly more convenient" standard is merely shorthand for a "flexible and individualized analysis" that takes into account and balances all relevant facts, including the interest of justice and judicial economy considerations. *Freehold Licensing, Inc. v. Aequitatem Capital Partners, LLC*, 2018 WL 5539929, at *6 (W.D. Tex. Oct. 29, 2018).[5] Indeed, "it is well established that the interest of justice is a factor ... to be considered on its own, and is ***an extremely important one***" at that. *Doubletree Partners, L.P. v. Land Am. Am. Title Co.*, 2008 WL 5119599, at *5 (N.D. Tex. Dec. 3, 2008) (citation and internal quotation marks omitted) (emphasis added); *see also Westberry v. GusTech Commc'ns, LLC*, 2018 WL 3548869, at *7 (N.D. Tex. July 24, 2018) (courts generally regard "judicial economy" as "a ***paramount consideration*** when determining whether a transfer is in the interest of justice" (emphasis added)). For this reason, courts routinely transfer cases in the interest of justice "***even if the convenience of the parties and witnesses calls for a different result***." *Whistler Grp., Inc. v. PNI Corp.*, 2003 WL 22939214, at *5 (N.D. Tex. Dec. 5, 2003) (emphasis added); *see also XY, LLC v. Trans Ova Genetics, LLC*, 2017 WL 5505340, at *15 (W.D. Tex. Apr. 5, 2017) ("A § 1404(a) motion can be granted because of the importance of judicial economy, even if the convenience factors are in favor of retention.").

---

[5] *See also Bandspeed, Inc. v. Acer, Inc.*, 2011 WL 3648453, at *1, *5 (E.D. Tex. Aug. 15, 2011) (holding "[c]onsiderations of judicial economy" demonstrate that the transferee forum "is 'clearly more convenient' than the venue chosen by" the plaintiff); *Quantum Catalytics, LLC v. VantagePoint Venture Partners*, 2008 WL 5272483, at *3 (S.D. Tex. Dec. 16, 2008) (noting that "[t]he court need not individually address each of the convenience and justice factors identified by the Fifth Circuit in *In re Volkswagen AG* to recognize that the claims … belong in Massachusetts" in the interest of "greater convenience, judicial economy, and efficiency").

To permit moving claims from court to court to circumvent unfavorable rulings would run counter to the "interest of justice"—and the filing and re-filing of the same claims in different courts also undermines judicial efficiency. *See Gen. Elec.*, 297 F. Supp. at 87.

### 2. VLSI Improperly Discounts the Efficiency Considerations Related to the Co-Pending Delaware I Action

The interest of justice and judicial economy also "favors resolving related patent cases in the same forum whenever possible," so as to "prevent an extravagantly wasteful and useless duplication of the time and effort of the federal courts by the simultaneous trial of two complex and elaborate cases involving substantially the same factual issues." *Whistler Grp.*, 2003 WL 22939214, at *5. VLSI all but ignores the efficiencies that transfer would achieve by virtue of Judge Connolly's existing familiarity with the parties and the technology. But such efficiencies significantly favor transfer. *See DataTreasury*, 243 F. Supp. 2d at 596 (transferring to forum with co-pending litigation because, "[g]iven the progress of the … [transferee forum] litigation, that court is more prepared and better suited to address the issues related to the patents-in-suit"); *Calamp Wireless Networks Corp. v. Orbcomm, Inc.*, 2016 WL 9150694, at *3 (E.D. Va. Nov. 10 2016) (transferring to court that "already considered motions to dismiss" and was "familiar with the Parties and the basic subject matter of the patents").

The Texas and Delaware cases involve overlapping accused products, evidence, witnesses, and expert subject matter.[6] (Mot. at 12-13.) For example, in the Texas Actions, VLSI accuses Intel's Ivy Bridge processors of infringing the '373 patent, which generally relates to

---

[6] VLSI faults Intel for purportedly describing the technological overlap between the cases at a high level of generality (Opp. at 15-16), but fails to acknowledge that courts have found overlap of precisely this nature sufficient to warrant transfer. *See, e.g.*, *Whistler Grp.*, 2003 WL 22939214, at *1, *5 (transferring where both cases involved "exactly the same parties" and the same general "radar detector" technology, even though the cases involved ***each party's*** unrelated patents having different specifications and non-overlapping claim terms); *Calamp Wireless Networks*, 2016 WL 9150694, at *3 (transferring where the parties' unrelated patents both involved the same broad "***technological area***" of "remote tracking systems" (emphasis added)).

6

power management in integrated circuits.  (*See* 254 Action, D.I. 1, ¶¶ 43-59.)  In the Delaware I Action, VLSI also accuses Intel's Ivy Bridge processors of infringing the '027 and '331 patents, which also relate to power management in integrated circuits.  (*See* 254 Action, D.I. 024-15 at 2, 3.)  The evidence related to these three patents across both suits will involve the same documents and Intel engineers knowledgeable about Ivy Bridge's power management schemes.  Similarly, VLSI accuses Intel's Skylake processors of infringing the '759 patent (in Texas) and the '026 patent (in Delaware), which also generally relate to power management in integrated circuits.  (*See* 254 Action, D.I. 1, ¶¶ 75-89; *id.*, D.I. 024-15 at 3.)  And the '522 patent and '187 patent (Texas) and the '027 patent (Delaware) share an inventor:  Marcus W. May.  (Mot. at 11-12.)

Finally, VLSI asserts that it is speculative whether these cases would be consolidated in Delaware if Intel's transfer motion were granted.  (Opp. at 12.)  But "it is the possibility—rather than the certainty—of consolidation that courts consider in the transfer analysis."  *Idenix Pharm., Inc. v. Gilead Scis., Inc.*, 2014 WL 12782106, at *4 (D. Mass. June 30, 2014).  And consolidation would certainly promote judicial efficiency for these actions.

### 3. VLSI's Analysis of the Private and Public Interest Factors Is Flawed

Beyond ignoring the justice and efficiency considerations set out above, VLSI's treatment of the private and public interest factors is also flawed for several additional reasons.

With respect to the "congestion" factor, for example, VLSI emphasizes that, according to median time-to-trial statistics, civil cases in this District go to trial in 23.2 months as compared to 30 months in Delaware.  (Opp. at 18-19.)  But these figures ignore the efficiencies that would be gained by litigating these cases before Judge Connolly, efficiencies that must be considered in the analysis.  *See Front Row Techs., LLC v. MLB Advanced Media, L.P.*, 2012 WL 12044383, at *5 (N.D. Tex. Dec. 17, 2012) ("On their face, … statistics might suggest that this factor weighs slightly against transfer," but "the[] numbers do not account for the fact that this case is related to

7

a previously-filed case in the District of New Mexico that involves many of the same issues."); *Affinity Labs of Tex., LLC v. Blackberry Ltd.*, 2014 WL 10748106, at *3 (W.D. Tex. June 11, 2014) ("[T]he Court cannot ignore the potential efficiencies gained by the Northern District of California based on its familiarity of similar technologies and patents … .").

When considered in context, the less-than-seven-month difference between the two forums' time-to-trial statistics does little to show that the cases would proceed more expeditiously here than in Delaware. *See Affinity Labs.*, 2014 WL 10748106, at *3 (finding that more-than-six-month difference in time-to-trial did not weigh in favor of transfer and noting the "speculative nature of case-disposition statistics"); *Stagecoach Putters, LLC v. Taylor Made Golf Co.*, 2015 WL 11622483, at *3 (W.D. Tex. Jan. 26, 2015) (refusing to "engage in th[e] speculation" of "attempt[ing] to accurately understand another court's docket from the outside").[7]

With respect to the "cost of attendance" factor, VLSI does not even suggest that it would be more convenient for its single employee, Mr. Stolarski, to litigate the parties' patent disputes here. VLSI also does not dispute that many of the relevant Fortress witnesses and third parties subpoenaed by both Intel and VLSI reside outside this District, and that many of the relevant third-party witnesses are therefore diffusely located. (Mot. at 18-19.) When the possibility of consolidation is properly considered, it becomes clear that it would be far less burdensome and costly for these witnesses to adjudicate the parties' disputes together in a single venue.

---

[7] Under VLSI's logic, a case would proceed faster in the Northern District of California, which has a median time-to-trial of 27.7 months, than in Delaware. (Opp., Ex. 11.) Yet VLSI argued just the opposite before Judge Connolly, citing the "relative lack of congestion in" Delaware as a reason the case would proceed more expeditiously there. (*Del. I*, D.I. 26, at 18-19.) VLSI justifies its shift by asserting that, since it filed the Delaware II Action, Judge Connolly's "docket has become much less manageable." (Opp. at 18.) That justification is both unsupported and untenable: a plaintiff cannot dismiss its case every time a judge's docket becomes busier.

*Westberry*, 2018 WL 3548869, at *9 ("The South Carolina Action[] … is pending in the District of South Carolina, and it will be more efficient and less expensive for all of the parties involved if this case is litigated in a single district, the District of South Carolina, than if these related cases were tried in two different district courts, located over 1,000 miles apart."); Mot. at 13, 17-18 (collecting cases).[8]

VLSI focuses its analysis almost exclusively on the location of the Texas-based inventors. (Opp. at 11.) But the notion that VLSI chose this District because it is more convenient for the inventors is belied by the fact that VLSI originally filed these actions in Delaware. And VLSI neglects to account for the fact that most patents-in-suit name multiple inventors—it is therefore highly unlikely that all the inventors will testify. On balance, relevant witnesses are located here and elsewhere such that the overall convenience of the witnesses does not favor one venue over any other.[9] (Mot. at 19.)

With respect to the "sources of proof" factor, citing only to its supporting attorney declaration and an assortment of non-asserted Intel patents, VLSI asserts that "documents relating to inventorship, conception, reduction to practice, and prosecution are located in this District" and further speculates that certain features in the accused products "appear[] to have been designed and developed, at least in significant part, by Intel employees in this District." (Opp. at 9-10 (citing Wen Decl. ¶¶ 18-26).) But this speculation is directly contradicted by the evidence. In correspondence related to Intel's subpoena served in the California Action, NXP

---

[8] VLSI cites to *AGIS Software Dev. LLC v. Huawei Device USA Inc.*, 2018 WL 2329752 (E.D. Tex. May 23, 2018), for the proposition that overlapping witnesses must be addressed under the "judicial economy" factor and cannot be "double-counted." (Opp. at 12-13). But *AGIS* merely proscribes considering "[a]ccess to witnesses for presentation at trial" under both the "subpoena power" factor and the "cost of attendance" factor. 2018 WL 2329752, at *2. It says nothing about considering "cost of attendance" in view of consolidation, which is proper.

[9] Further, as Intel explained in its opening brief, two of the Texas-based inventors are now Intel employees, such that any convenience issue is for Intel, not VLSI. (Mot. at 19.)

9

represented that "the files maintained by NXP concerning the development of the asserted patents" in that case were "turned over to VLSI" and therefore not in NXP's possession in Texas. (Ex. 1 [2018-02-02 Letter] at 2.) And the sworn declaration of Intel employee Thomas Herrgott submitted in support of Intel's motion establishes that the accused features were not designed or developed in this District. (Herrgott Decl. ¶¶ 6-9.)[10] In any event, as the Federal Circuit has emphasized, "the bulk of the relevant evidence usually comes from the accused infringer," not the patentee. *DataQuill, Ltd. v. Apple Inc.*, 2014 WL 2722201, at *3 (W.D. Tex. June 13, 2014) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). And as noted, **none** of the evidence regarding the operation of the accused products and features is located in this District. (Mot. at 16; Herrgott Decl. ¶¶ 6-9.)

### III. CONCLUSION

Intel respectfully requests transfer of the Texas Actions to the District of Delaware so that they can be considered for consolidation with the Delaware I Action.

---

[10] This speculation is not supported by the evidence VLSI cites. For example, VLSI contends that the '187 patent has a connection to this District simply because the patent purportedly "relates" to "band gap references," which is also referenced in a patent once owned by Intel (U.S. Patent No. 7,643,803, Opp., Ex. 6) that names an Austin resident as one of its three inventors. (Wen Decl. ¶ 25.) But a "band gap reference" is a common and well-known circuit component. (*See* Ex. 2 [Pandey Article] (noting that band gap reference was first proposed in 1971 and is "a basic design block of any analog circuit").) The '187 patent does not "relate" to "band gap references" any more than it "relates" to any other well-known circuit components. Further, for the patent on which VLSI relies, only one of the three inventors lived in Austin at the time the patent issued; the other two lived in India. (Opp., Ex. 6, cover page.)

10

Dated: June 10, 2019

William F. Lee (*Pro Hac Vice*)
Louis W. Tompros (*Pro Hac Vice*)
Kate Saxton (*Pro Hac Vice*)
WILMER CUTLER PICKERING HALE
  AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Email: william.lee@wilmerhale.com
Email: louis.tompros@wilmerhale.com
Email: kate.saxton@wilmerhale.com

Gregory H. Lantier (*Pro Hac Vice*)
Amanda L. Major (*Pro Hac Vice*)
WILMER CUTLER PICKERING HALE
  AND DORR LLP
1875 Pennsylvania Avenue
Washington DC 20006
Tel: (202) 663-6000
Email: gregory.lantier@wilmerhale.com
Email: amanda.major@wilmerhale.com

Alexis Pfeiffer (*Pro Hac Vice*)
WILMER CUTLER PICKERING HALE
  AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Tel: (650) 858-6052
Email: alexis.pfeiffer@wilmerhale.com

Respectfully submitted,

*/s/ J. Stephen Ravel*
J. Stephen Ravel
Texas State Bar No. 16584975
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
Email: steve.ravel@kellyhart.com

James E. Wren
Texas State Bar No. 22018200
1 Bear Place, Unit 97288
Waco, Texas 76798
Tel: (254) 710-7670
Email: james.wren@baylor.edu

Sven Stricker
Texas State Bar No. 24110418
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6464
Email: sven.stricker@kellyhart.com

*Attorneys for Intel Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system per Local Civil Rule CV-5(a)(3) on June 10, 2019.

>*/s/ J. Stephen Ravel*
>J. Stephen Ravel
>Texas State Bar No. 16584975
>KELLY HART & HALLMAN LLP
>303 Colorado, Suite 2000
>Austin, Texas 78701
>Tel: (512) 495-6429
>Email: steve.ravel@kellyhart.com