# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| **VLSI TECHNOLOGY LLC,** § | |
| *Plaintiff,* § | |
| § | NO. 6:19-CV-00254-ADA (LEAD CASE) |
| v. § | NO. 6:19-CV-00255-ADA |
| § | NO. 6:19-CV-00256-ADA |
| **INTEL CORPORATION** § | |
| *Defendant.* § | |

## ORDER GRANTING DEFENDANT INTEL CORPORATION'S MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

Before the Court is Defendant Intel Corporation's Motion to Transfer Venue Under 28 U.S.C. § 1404(a), which was filed on August 14, 2019. Def. Mot. [ECF #56].[1] Plaintiff VLSI Technology, LLC filed its Response on August 29, 2019. Pl. Resp. [ECF #65]. Intel filed its Reply on September 12, 2019. Def. Reply [ECF #73]. VLSI filed its sur-reply on September 17, 2019. Pl. Sur-Reply [ECF #76]. After considering all related pleadings and the relevant law, the Court is of the opinion that Intel's Motion should be **GRANTED**.

### I. Factual Background

VLSI sued Intel for allegedly infringing eight patents. ECF #1; No. 6:19-cv-0255, ECF #1; No. 6:19-cv-0256, ECF #1. Intel filed a motion to transfer venue to the District of Delaware on May 20, 2019. ECF #24. The Court conducted a hearing on Intel's Motion to Transfer on July 31, 2019. The Parties acknowledge that this District is a legally proper forum for these actions. Def. Mot. at 5. The Court agreed with VLSI that this District is the most sensible and convenient forum when the facts of the cases are properly considered. Transfer Order [ECF #53] at 16. Now at issue is whether the Austin Division is clearly more convenient than the Waco

---

[1] The above styled cases have been consolidated together for pre-trial. Unless otherwise noted, all docket references are to the 6:19-cv-0254 case.

Division. This case was filed in the Waco Division, but it concerns inventions made in the Austin Division, by inventors who reside in Austin, in the course of their employment at companies based in Austin. Def. Mot. at 9. The vast majority of the living inventors named on the asserted patents are believed to still reside in Austin. *Id*. at 7.

The inventors worked at Austin companies SigmaTel, Inc. and Freescale Semiconductor, Inc. Def. Mot at 7. Freescale acquired SigmaTel in 2008. *See, e.g.*, https://www.businesswire.com/news/home/20080430006255/en/Freescale-Completes-Acquisition-SigmaTel (last visited Oct. 5, 2019). NXP, in turn, acquired Freescale in 2015. *See, e.g.*, https://investors.nxp.com/news-releases/news-release-details/nxp-and-freescale-announce-completion-merger (last visited Oct. 5, 2019). NXP is one of the world's leading semiconductor manufacturers, whose domestic operations are also headquartered in this District. ECF #41 at 1. NXP and VLSI contend that they are working together to obtain fair value for the use of NXP's and its predecessors' inventions. *Id*. VLSI argues that if it prevails, its recovery will be reinvested in research and development in this District. *Id*. Further, numerous NXP and Freescale employees involved in evaluating, patenting, licensing, and otherwise commercializing the inventions at issue reside in Austin. *Id.*

Intel has a substantial presence in Austin and allegedly conducts substantial infringing activities in Austin, including at least the use, marketing, and sale of accused products to Austin customers. *Id*. VLSI alleges that one of Intel's "top" customers for the accused products is Dell Technologies, Inc., which is headquartered in Round Rock, Texas, a suburb of Austin. *Id*. VLSI also asserted that publicly available information demonstrates that many of Intel's own 1,700 employees in Austin have been and remain deeply involved in work on the technologies at issue in these cases. *Id.* at 1–2. VLSI asserted that Intel's employees from this District have nearly

100 patents which explicitly discuss Intel's Quick Path Interconnect technology, which is accused under the U.S. Patent No. 7,606,983, and that considerable other published work of local Intel employees also concerns patented technologies at issue here. *Id.* at 2.

By contrast, neither party has a facility or a relevant employee in Waco. Def. Mot. at 7. None of the inventors of the asserted patents live in Waco. *Id.* None of the inventions at issue were made in Waco. Neither party identifies any relevant third parties with operations or employees in Waco. *Id.*

## II. Standard of Review

Title 28 U.S.C. § 1404(a) provides that, for the convenience of parties and witnesses, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *VanDusen v. Barrack*, 376 U.S. 612, 622 (1964)). The party moving for transfer carries the burden of showing good cause. *Humble Oil & Ref Co. v. Bell Marine Service, Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) (hereinafter "*Volkswagen II*") ("When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must . . . clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'") (quoting 28 U.S.C. § 1404(a)). "The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312. If this requirement is met, the Fifth Circuit Court of Appeals has held that "[t]he determination of 'convenience' turns on a number of public

and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. US. Fid & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing to *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

A plaintiff's choice of venue is not an independent factor in the venue transfer analysis, and courts must not give inordinate weight to a plaintiffs choice of venue. *Volkswagen II*, 545F.3d at 314 n.10, 315 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiffs choice should be respected." *Id.* at 315.

### III. Discussion

The Court finds that three factors weigh in favor of transfer and one factor slightly weighs against while the remaining factors are neutral.

## A.     The Private Factors Weigh in Favor of Transfer

### i.     The "Relative Ease of Access to Sources of Proof" Factor Weighs in Favor of Transfer

The Court finds that relative ease of access to sources of proof weighs in favor of transfer for at least two reasons. First, given that Intel has a campus in Austin, but not in Waco, it is easier to access Intel's electronic documents from Austin than from Waco. By contrast, because VLSI and Fortress[2] do not have locations in Austin or Waco, their documents are equally accessible from either city.

Second, the Court finds that documents from third-parties are relatively more accessible from Austin than Waco. VLSI argued previously and Intel emphasizes that most of the patents were invented in Austin, by inventors residing in Austin, while working at companies (Freescale and SigmaTel, now NXP) in Austin. Def. Mot. at 6. Because NXP has its U.S. headquarters in Austin, documents relating to inventorship, conception, reduction to practice, and prosecution are more likely to be in Austin than in Waco. Transfer Mot. at 9; *InMotion Imagery Techs., LLC v. Imation Corp.*, No. 2:1 2-CV-298-JRG, 2013 WL 1279055, at *3 (E.D. Tex. 2013) (weighing as relevant "third-party sources of proof, such as the inventors of the asserted patents"). Furthermore, for the same reason, the Austin Division is the more convenient venue to resolve any issues related to the transfer of the patents to VLSI by NXP.

Intel also identifies Dell, which is headquartered in Round Rock, Texas and is allegedly "one of Intel's top customers" as a potential source of proof. Def. Mot. at 6–7 (quoting ECF #41-1, ¶ 18). VLSI does not identify any sources of proof within the Waco division, but VLSI does identify Texas Instruments, which allegedly supplies voltage regulators to Intel, and NEC of America, which is a "large" Intel customer, which are both headquartered in the Dallas-Fort

---

[2] Fortress Investment Group LLC is a New York hedge fund that formed VLSI. Def. Mot. at 2.

Worth Metroplex, as potential sources of proof. Pl. Resp. at 4. VLSI additionally identifies Dell,[3] Hewlett-Packard,[4] Acer, Panasonic, Huawei, Wistron, and Cadence,[5] which allegedly are other Intel customers or suppliers and have Texas facilities that are closer to Waco than Austin, as additional sources of proof. *Id.* at 4–5.

While VLSI has identified more sources of proof for which the Waco Division may be more convenient than the Austin Division, the Court finds that this factor still weighs in favor of transfer. Of all the third-party companies that were identified, the most important one—by far—and the one likely to have the most relevant documents is NXP, which has its U.S. headquarters in Austin. By contrast, the other companies that the parties identified will likely have a significantly smaller number of relevant documents, if any relevant documents at all.

### ii. The "Compulsory Process" Factor Slightly Weighs Against Transfer

The only witnesses that may need to be compelled to testify at trial are the Dallas-based non-party witnesses. Def. Reply at 5; Pl. Sur-Reply at 4. The parties appear to agree that this Court, pursuant for Rule 45(c)(1)(B)(ii), can compel Dallas-based non-party witnesses to attend trial in Austin. Def. Reply at 5; Pl. Sur-Reply at 4. But VLSI contends that even if the witnesses can be compelled to testify at a trial in Austin, their costs will be lower if they testify in Waco. The Court agrees with VLSI. But because none of the Dallas-based witnesses are "key" witnesses, *see infra*, this factor only weighs slightly against transfer.

---

[3] Because Dell has its headquarters in Austin, the Court ignores non-Austin Dell locations.

[4] It is unclear if VLSI is referring to Hewlett-Packard or Hewlett-Packard Enterprise (or both) given that both HP and HPE may purchase the accused Intel microprocessors. For the purposes of this Order, the Court assumes HP only.

[5] Based on its review of the patents-in-suit, the Court is puzzled as to the inclusion of Cadence—a vendor of electronic design automation ("EDA") tools—as an Intel supplier that may have documents that are relevant to the patents-in-suit. Semiconductor companies use EDA tools to implement and optimize the integrated circuit for a specific technology node corresponding to the higher-level design. Given that several layers of abstraction separate the inventions described in the patents-in-suit and cell, gate, transistor, and circuit-level of abstraction that EDA tools implement, it seems to be extremely unlikely that Cadence is a relevant source of proof. Accordingly, the Court will ignore Cadence for the purposes of this § 1404 analysis.

### iii. The "Cost of Attendance" Factor Strongly Weighs in Favor of Transfer

The relative convenience to the witnesses is often recognized as the most important factor under § 1404(a). *Mid-Continent Cas. Co. v. Petroleum Solutions, Inc.*, 629 F. Supp. 2d 759, 762 (S.D. Tex. 2009). But in considering the convenience of witnesses, however, the relative convenience to key witnesses is accorded greater weight in the venue transfer analysis than non-key witnesses. *Id.* at 762–63 (citing cases). In fact, the convenience of one key witness may outweigh the convenience of numerous less important witnesses. *Continental Airlines, Inc. v. Am. Airlines, Inc.*, 805 F. Supp. 1392, 1396 (S.D. Tex. 1992). And between party and non-party key witnesses, a court should give greater weight to the availability and convenience of non-party key witnesses. *Id.* at 1397.

Intel contends that this factor favors transfer because 1) VLSI had previously argued that seventeen of the eighteen living inventors reside in Austin, 2) VLSI had previously argued that NXP has numerous witnesses who were involved in evaluating, patenting, licensing, and otherwise commercializing the inventions, and 3) Any in-district Intel employees would be based in Austin. Def. Mot. at 7–8. VLSI contends that this factor does not favor transfer because 1) the non-party Fortress witnesses that Intel subpoenaed in connection with the Delaware litigation prefer to travel to Waco over Austin because of Austin's well-documented traffic congestion and high hotel costs, 2) Intel has subpoenaed twenty other people in the Delaware case alone who reside outside of Texas, 3) Many inventors of Intel patents relevant to the accused technologies do not reside in Austin, and 4) VLSI identifies two former SigmaTel vice-presidents that are closer to Waco than Austin. Neither party identifies any witnesses that reside in Waco.

This factor weighs strongly in favor of transfer for the reasons that follow. First, seventeen of the eighteen living inventors reside in Austin while none reside in Waco. Because inventors' testimony is extremely important, inventors are key witnesses and the Court gives

greater weight to their convenience. *Mid-Continent*, 629 F. Supp. 2d at 762. Second, although the NXP witnesses may not be as important as the inventors, because they were involved in evaluating, patenting, licensing, and otherwise commercializing the inventions, the NXP witnesses may also be key witnesses. Finally, because the convenience of party witnesses is given little weight, the Court accords little weight to the convenience of any in-district Intel employee who may attend trial. *See ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, No. A-09-CA-773-LY, 2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010), report and recommendation adopted in A-09-CA-773-LY (ECF No. 20) (Apr. 14, 2010).

VLSI's arguments do not change the Court's conclusion that this factor weighs strongly in favor of transfer. First, although the Fortress witnesses may provide testimony in this case, because they reside all over the country, the Court finds that the Austin and Waco Divisions are equally convenient for them. More specifically, while Austin traffic is often quite congested, the drive from Austin-Bergstrom International Airport ("ABIA") to the Austin Federal courthouse generally takes less than 30 minutes while the trip from Dallas-Fort Worth International Airport (or ABIA) to the Waco Federal courthouse will take at least 90 minutes. Therefore, from a traffic point-of-view, Austin is more convenient. The Court agrees with VLSI that Austin hotel costs are, generally, significantly more than Waco hotel costs. But overall, the Court finds that the Austin and Waco Divisions are equally convenient for out-of-state witnesses. Second, because it is unclear whether any of the twenty witnesses that Intel subpoenaed in the Delaware case are relevant to the Texas cases and, if they do have relevant testimony, whether any of them will testify live at trial, the Court accords little weight for these witnesses. Third, while these Intel witnesses may have relevant testimony, the Court accords little weight for these witnesses as it is unclear if any of them will testify live at trial and because party witnesses are entitled to

little weight.  Fourth, the Court gives little weight for the two SigmaTel vice-presidents because they may not have relevant testimony (and if they do, it is likely to be at a high-level), and it is unclear if they will testify live at trial.  In any case, even if the Fortress witnesses, the twenty witnesses subpoenaed in the Delaware case, the Intel witnesses, and the two SigmaTel vice-presidents have relevant information and will testify live at trial, the Court finds none of these witnesses are key witnesses.  As such, the convenience of these witnesses does not outweigh the convenience of the inventors and Austin-based NXP witnesses, which are likely to be "key" witnesses.  *Continental Airlines*, 805 F. Supp. at 1396.

Therefore, this factor strongly weighs in favor of transfer to the Austin Division.

### iv. The "All Other Practical Problems" Factor is Neutral

Intel argues that because the Austin Division is allegedly more convenient, the process could be quicker in Austin, thus weighing in favor of transfer.  Def. Mot. at 8.  Intel concludes by arguing even if its previous argument is not persuasive, there is no reason to believe the case would proceed more quickly in Waco.  *Id.* at 8–9.  VLSI's only argument is that Intel misinterpreted the meaning of this factor and merely recycled arguments from other factors.  Pl. Resp. at 8.  The Court agrees with VLSI.  Because there are no arguments that weigh in favor for or against transfer, this factor is neutral.

## B. The Public Factors Weigh in Favor of Transfer

### i. The "Localized Interest" Factor Weighs in Favor of Transfer

The Court has already sufficiently addressed this factor above. The patents-in-suit were all invented in Austin, primarily by residents of Austin, and at companies based in Austin.  In addition, Intel employs a significant number of people working in Austin.  *See supra.*  VLSI argues Waco has a local interest because Intel products are sold in Waco.  Pl. Resp. at 8.  By that logic, Austin's localized interest would at a minimum be equal to Waco's interest because Intel

products are also sold in Austin. Regardless, it is apparent the Austin Division has a greater localized interest for the reasons stated above. As such, this factor also weighs in favor of transfer.

### ii. The Remaining Public Factors are Neutral

The remaining public factors are administrative difficulties flowing from court congestion, familiarity of the forum with law that will govern case, and problems associated with conflict of laws. Neither party argued these factors. These factors, however, are either neutral or inapplicable because this Court will preside over this case, whether the case is in the Austin Division or in the Waco Division.

### IV. Conclusion

Because of the reasons discussed above, the Court finds that three factors weigh in favor transfer, one factor is slightly against, and the remaining factors are neutral. Accordingly, the Court finds that Intel has met its burden to show that the Austin Division is "clearly more convenient" than the Waco Division. As such, the Court finds that Defendant Intel Corporation's Motion to Transfer Venue Under 28 U.S.C. § 1404(a) should be and hereby is **GRANTED** and that the above-styled case be **TRANSFERRED** to the Austin Division but remain on the docket of United States District Judge Alan D Albright and according to the scheduling order that was entered in this case on September 9, 2019.

**SIGNED** this 7th day of October, 2019.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE